**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Mary E. MARTINEZ, a/k/a Esperanza Lozada; and Clara J. Araujo, Defendants–Appellants.**

**Nos. 91–4174, 91–4177.**

United States Court of Appeals,
Tenth Circuit.

Dec. 29, 1992.

Mary C. Corporon, of Corporon & Williams, P.C., Salt Lake City, UT, for defendant-appellant Mary E. Martinez.

Joseph C. Fratto, Jr., Salt Lake City, UT, for defendant-appellant Clara J. Araujo.

Bruce C. Lubeck (David J. Jordan, U.S. Atty., with him on the briefs), Asst. U.S. Atty., for plaintiff-appellee.

Before LOGAN and TACHA, Circuit Judges, and CAUTHRON, District Judge.[*]

TACHA, Circuit Judge.

In this consolidated appeal, Defendants Clara Araujo and Mary Martinez challenge their convictions on single counts of possessing cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Ms. Martinez also appeals her sentence. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742 and affirm.

On April 4, 1991, a Utah highway patrolman observed a vehicle driving east on Interstate 80 at a slow rate of speed in the left or "fast lane" of the two-lane highway leading uphill and away from Salt Lake City. Due to its slow speed, faster-moving cars were forced to pull into the right lane to pass the vehicle. The patrolman pulled behind the slower vehicle and flashed his headlights in an effort to get the vehicle to move into the slower lane of traffic on the right. Instead of moving to the right lane, the vehicle decelerated.

The officer again flashed his headlights and waved his hand to signal the driver to pull into the right lane. However, the vehicle came to a complete stop in the left lane of the congested interstate. At this point, the officer turned on his emergency lights and signaled with his air horn for the vehicle to move to the right side of the highway. The driver complied and pulled to a stop in the breakdown lane.

As he approached the vehicle, the officer noticed the displayed Minnesota license plates were expired. Ms. Araujo, the driver, handed the officer a valid New Jersey operator's license as well as a Minnesota car title showing a man named John Selega had transferred ownership of the vehicle to a Cheryl Clark of Minnesota three months earlier. Ms. Araujo provided no registration.

The officer asked Ms. Araujo who owned the car. Ms. Araujo stated she borrowed the car from a friend named Deanna or Diana Lopez in Las Vegas and the car belonged to Ms. Lopez's boyfriend. The officer testified he suspected the car was stolen and asked what was in the trunk in an effort to test Ms. Araujo's ability to identify the contents. Without comment, Ms. Araujo opened the trunk. Inside, the officer observed a blue suitcase and a spare tire that was not located in its designed compartment. He also noticed the trunk was shortened so that it did not extend under the rear window and was not what he considered a normal size trunk. Ms. Araujo then closed the trunk.

The officer contacted Mr. Selega by telephone and he confirmed he sold the car to

---

[*] Honorable Robin J. Cauthron, United States District Judge for the Western District of Oklahoma, sitting by designation.

Cheryl Clark in January. However, the officer was unable to locate anyone named Cheryl Clark to inquire further about ownership of the vehicle. A computer check revealed no reports of a stolen vehicle matching the car.

After inquiring as to the identity of the passenger, Ms. Araujo explained Ms. Martinez was a Colombian who spoke no English. As a result, the officer called for assistance from a Spanish-speaking officer who arrived approximately ten minutes later. The two officers then questioned the women separately, without advising either individual of their *Miranda* rights.[1] The second officer questioned Ms. Martinez for only two minutes. Ms. Martinez explained they had left Los Angeles, stayed in Las Vegas, and were headed to Minnesota on a pleasure drive. Ms. Araujo, however, replied they had no particular destination and were just sightseeing.

The officers asked Ms. Araujo if they could inspect the trunk again. Although it is unclear which of the two women opened the trunk, Ms. Araujo insisted she had nothing to hide and walked to the rear of the car. The officers tapped the back panel of the trunk compartment and found it had considerable "give." They lifted the unsecured panel and observed what they believed were packages containing kilogram quantities of cocaine.

The officers arrested the two women and secured the vehicle at a highway patrol facility until they could obtain a search warrant the next day. Officers subsequently recovered 22.2 kilograms of high-grade cocaine from the trunk compartment. Following their arrest and *Miranda* warnings, Ms. Araujo stated they were indeed headed for Minnesota but neither of them knew drugs were hidden in the car. At the suppression hearing, both women testified their original car had broken down near Las Vegas and a woman named Cyndy Lopez, not Diana Lopez as named earlier, loaned them her boyfriend's car to go sightseeing. Neither woman knew the name of the boyfriend, however.

Citing numerous constitutional violations, both Ms. Araujo and Ms. Martinez moved to suppress all evidence and testimony acquired as a result of the stop. The district court adopted the magistrate judge's recommendation denying Defendants' motion to suppress the narcotics and statements made by both women. A jury trial resulted in guilty verdicts, and this appeal followed.

Both Defendants assert the district court erred in denying the motion to suppress, claiming (1) the initial stop was pretextual; (2) they had standing to assert a Fourth Amendment violation; (3) the officers had no probable cause to request permission to search the car; (4) no valid consent was issued for the search; (5) the subsequent search warrant resulted from the initial illegal search, thereby requiring suppression of the narcotics; (6) their detention was unreasonable; and (7) the stop resulted in a custodial interrogation requiring *Miranda* warnings. In addition, Ms. Martinez claims the trial court erred by denying her motion in limine to exclude evidence of her nationality and by refusing to grant a downward adjustment of her sentence by four points based on her alleged minimal role in the offense.

## I

■ At the outset, Ms. Martinez claims the initial traffic stop was pretextual. She asserts the officer had only a hunch the two Hispanic women were involved in some illegal activity rather than basing the stop on legitimate grounds. Ms. Martinez contends they were traveling under the posted speed limit and the officer's explanation that he stopped them because they were traveling in the left lane was not reasonable. For support, she points to an expert's testimony at trial which contradicted the officer's account of the events leading to the stop.[2] Ms. Martinez's argument lacks merit and support.

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. The magistrate judge expressly found at least a portion of the expert's testimony not credible.

■ When reviewing the denial of a motion to suppress, we must accept the district court's fact findings unless those findings are clearly erroneous. *United States v. Berryhill*, 880 F.2d 275, 280 (10th Cir. 1989), *cert. denied*, 493 U.S. 1059, 110 S.Ct. 853, 107 L.Ed.2d 846 (1990). The district court accepted the officer's description of the events, finding the officer stopped the vehicle after it came to a complete halt in the left lane of the interstate. The record supports these findings and we therefore reject Ms. Martinez's attempt to relitigate the facts.

■ The standard for determining if the stop of a vehicle for a misdemeanor traffic infraction is pretextual turns on whether the stop was objectively reasonable under the circumstances. *United States v. Guzman*, 864 F.2d 1512, 1517 (10th Cir.1988) (citing *United States v. Smith*, 799 F.2d 704, 709–10 (11th Cir. 1986)). We inquire "whether under the same circumstances a reasonable officer *would* have made the stop in the absence of the invalid purpose." *Id.* (emphasis in original). In short, if officers in the jurisdiction routinely enforce the traffic law at issue, then the stop is not pretextual even if the officer "hoped to discover contraband during the stop." *Id.* at 1518. Stated differently, to show pretext, "the law enforcement officer must deviate from his usual practice." *United States v. Werking*, 915 F.2d 1404, 1408 (10th Cir.1990).

While on routine patrol on Interstate 80, the officer observed Defendants' vehicle driving in the left lane and slower than the flow of traffic.[3] He noted other vehicles approaching Defendants' car from the rear had to move to the right lane to pass. After several attempts to signal the driver to move to the right lane, the vehicle came to a complete stop in the left lane before finally pulling off the right side of the road. The officer testified his normal practice after removing a slow vehicle from the fast lane is to issue a warning or a citation.

Given the facts detailed in the record, we conclude the officer's decision to stop the vehicle was " 'business as usual,' not a deviation from normal practice." *Id.* We believe the officer's decision to stop the vehicle was fully justified and consistent with his usual practice of enforcing Utah's motor vehicle laws. Ms. Martinez puts forth no evidence that convinces us otherwise.

II

Next, Ms. Araujo and Ms. Martinez assert they have standing to challenge the vehicle search and subsequent cocaine discovery because their exercise of dominion over the car also conveyed to them a reasonable expectation of privacy over the contents of the vehicle. We disagree.

Because the standing issue remains " 'invariably intertwined' " with substantive Fourth Amendment privacy rights analysis, logic dictates we "determine 'whether the challenged search or seizure violated the Fourth Amendment rights of [the] criminal defendant who seeks to exclude the evidence.' " *United States v. Arango*, 912 F.2d 441, 445 (10th Cir.1990) (quoting *Rakas v. Illinois*, 439 U.S. 128, 139–40, 99 S.Ct. 421, 428, 58 L.Ed.2d 387 (1978)), *cert. denied*, —— U.S. ——, 111 S.Ct. 1318, 113 L.Ed.2d 251 (1991).

In deciding whether a search has infringed upon protected constitutional rights of a particular defendant who seeks the exclusion of the resulting evidence, we examine two primary factors: "whether the defendant manifested a subjective expectation of privacy in the area searched and whether society would recognize that expectation as objectively reasonable." *Id.* The burden of showing standing to challenge a search and seizure rests with the defendant. *See Rakas v. Illinois*, 439 U.S. 128, 130 n. 1, 99 S.Ct. 421, 424 n. 1, 58 L.Ed.2d 387 (1978). Because passengers often have little or no

---

**3.** Under Utah law, the driver of an overtaken vehicle operating in the left lane of a multi-lane highway must yield to an overtaking vehicle "by moving safely to the right, and may not impede the movement or free flow of traffic in the left lane." Utah Code Ann. §§ 41–6–55(3) (1988). The officer who stopped Ms. Araujo and Ms. Martinez testified, and the district court found, that Utah highway patrol officers routinely enforce the "left lane" law.

privacy rights in a motor vehicle, we address each Defendant separately.

### A. Ms. Araujo's Standing

■ In *Arango*, we held that where a non-owner driver of a vehicle failed to present evidence he lawfully possessed a vehicle stopped for speeding, the driver had no reasonable expectation of privacy in the vehicle. 912 F.2d at 444–46. Although we recognized "that the proponent of a motion to suppress need not always come forward with legal documentation establishing" lawful possession of the area searched, "the proponent must at least state that he gained possession from the owner or someone with the authority to grant possession." *Id.* at 445 (citing *United States v. Miller*, 821 F.2d 546, 548 & n. 2 (11th Cir.1987)). Ms. Araujo has not satisfied this burden.

Foremost, Ms. Araujo did not gain possession of the vehicle from the registered owner. Instead, she claimed to have borrowed the car from a friend named Ms. Lopez in Las Vegas, who in turn got the car from her boyfriend. In fact, Ms. Araujo could not even identify the name of the registered owner. Although affidavits indicated Defendants believed Ms. Lopez had authority to loan them the car, no evidence was produced at the suppression hearing to show Ms. Lopez had any authority to grant either Ms. Araujo or Ms. Martinez permission to possess the vehicle. Moreover, the owner listed on the title was not Ms. Lopez's boyfriend in Las Vegas but, rather, a woman in Minnesota.

■ Mere possession of the vehicle and the keys are not sufficient to confer standing. *United States v. Erwin*, 875 F.2d 268, 271 (10th Cir.1989) (citing *United States v. Sanchez*, 635 F.2d 47, 64 (2d Cir.1980)). Nevertheless, Ms. Araujo asserts she possessed luggage in the trunk, which conferred upon her an expectation of privacy over the trunk. We disagree. At best, given the uncertainty over the ownership of the vehicle, she may have possessed a reasonable expectation of privacy over the contents of the luggage, not over the trunk where the luggage was located.

In sum, Ms. Araujo simply did not produce evidence sufficient to establish a reasonable expectation of privacy in the particular area searched. *See United States v. Obregon*, 748 F.2d 1371, 1374–75 (10th Cir. 1984) (defendant driver had no reasonable expectation of privacy in rental car by virtue of his mere physical possession where rental agreement provided the car had been rented by unrelated third party and no evidence existed of any arrangement with the rental company allowing defendant lawfully to drive the car); *United States v. Erickson*, 732 F.2d 788, 790 (10th Cir.1984) (defendant had no reasonable expectation of privacy in aircraft where he failed to demonstrate credibly he had authority from registered owner to possess, use, or fly the aircraft); *United States v. Smith*, 621 F.2d 483, 487–88 (2d Cir.1980) (driver of automobile did not have standing to contest search where he was not owner and failed to establish he lawfully possessed the vehicle), *cert. denied*, 449 U.S. 1086, 101 S.Ct. 875, 66 L.Ed.2d 812 (1981).

### B. Ms. Martinez's Standing

■Ms. Martinez bases her standing claim on essentially the same arguments as those of co-defendant Araujo. We remain unconvinced.

In *Rakas*, the Supreme Court held a nonowner passenger in a motor vehicle "simply would not normally have a legitimate expectation of privacy" in the vehicle's trunk sufficient to challenge a search. 439 U.S. at 148–49, 99 S.Ct. at 433. Recently, this Circuit ruled that even where a nonowner passenger assisted in driving the car on a long-distance trip, the passenger had no standing to assert a privacy interest in the vehicle where the owner was present and defendant did not assert an interest in the marijuana and cocaine seized by police. *United States v. Jefferson*, 925 F.2d 1242, 1251 (10th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 238, 239, 116 L.Ed.2d 194 (1991).

Ms. Martinez attempts to distinguish the circumstances surrounding her presence in the vehicle from *Rakas* and *Jefferson*. She asserts the presence of her suitcase in the trunk of the car indicates she exercised

dominion and control over the vehicle itself sufficient to establish a reasonable expectation of privacy. We disagree. Like Ms. Araujo, she at best may have had a privacy interest in the suitcase, but not the trunk. She asserts no interest in the cocaine found in the secret compartment located in the trunk.

Still, Ms. Martinez contends the fact the owner of the vehicle was not present at the scene and their extended use of the vehicle over a period of days somehow distinguishes her situation from *Rakas*. She likens her case to *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), *overruled on other grounds by United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980), where the Supreme Court held that a guest present in his friend's apartment had standing sufficient to object to a search of the apartment. Again, we disagree.

The mere absence of the vehicle's owner here did not automatically convey a possessory interest in the car to Ms. Martinez. Nor are we prepared to declare that society would recognize an expectation of privacy in a vehicle where neither occupant produced credible evidence showing lawful possession of the vehicle. Furthermore, we previously have held that privacy concerns involving overnight guests in another's home "simply do not apply in the context of automobile searches and seizures." *Jefferson*, 925 F.2d at 1251; *see also Rakas*, 439 U.S. at 148, 99 S.Ct. at 433 (noting that "cars are not to be treated identically with houses or Apartments for Fourth Amendment purposes"). Nor does the length of the drive alter the level of privacy protection. As we noted in *Jefferson*, "whether [the car] is driven across town or across the country, a car does not envelop its occupants in a house-like cloak of Fourth Amendment protection." 925 F.2d at 1251.

In the final analysis, Ms. Martinez has put forth no evidence that convinces us she retained a possessory interest in the vehicle sufficient to challenge the police officers' search of the trunk and subsequent seizure of cocaine. We see little distinction between the circumstances surrounding Ms. Martinez's presence in the vehicle here and the circumstances prevailing in *Rakas* and *Jefferson* sufficient to extend Fourth Amendment privacy protections to a nonowner passenger. Absent standing, we need not consider either Ms. Araujo's or Ms. Martinez's challenge to the initial search of the trunk or the related issues of consent and whether the subsequent search warrant resulted from an illegal search.

### III

■ Although Ms. Araujo and Ms. Martinez cannot challenge the search of the vehicle, they can challenge their own seizure. *See Arango*, 912 F.2d at 446. Both Defendants contend the stop resulted in an unreasonable detention requiring suppression of all evidence seized and statements made "as fruit of the unlawful detention."

In *Guzman*, we acknowledged that stopping a vehicle and detaining its occupants constitutes a Fourth Amendment seizure. 864 F.2d at 1519. As such, we held an officer conducting a routine traffic stop generally may detain persons only for the period it takes to request an operator's license and vehicle registration, run necessary computer checks, and issue a citation. However, we noted further questioning is permissible when the officer has reasonable suspicion " 'of illegal transactions in drugs or of any other serious crime.' " *Id.* (quoting *Florida v. Royer*, 460 U.S. 491, 498–99, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983) (plurality opinion)).

Determination of the validity of a roadside detention requires that "we balance the nature of the intrusion on fourth amendment interests against the importance of the governmental interests involved." *Arango*, 912 F.2d at 446 (citing *United States v. Sharpe*, 470 U.S. 675, 685, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985)). The relevant inquiry centers on whether " 'the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant.' " *Id.* (quoting *Sharpe*, 470 U.S. at 686, 105 S.Ct. at 1575). The police

officer's actions must be justified at their inception and "reasonably related to the circumstances which justified the interference at the outset." *Id.* (citing *Terry v. Ohio,* 392 U.S. 1, 19–20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968)).

Ms. Martinez argues she and Ms. Araujo were unreasonably detained over two hours. Citing *United States v. Gonzalez,* 763 F.2d 1127 (10th Cir.1985), Ms. Martinez argues they were "seized" in violation of the Fourth Amendment, warranting suppression of all statements made and evidence discovered during the investigatory stop. In *Gonzalez,* we held the district court should have suppressed cocaine discovered after a police officer coerced defendant into accompanying him to the police station to conduct a search for drugs. *Id.* at 1132–33. The officer persuaded the defendant to follow him to headquarters by retaining his driver's license, car registration and title. *Id.* at 1132. In effect, we held that "defendant had no reasonable choice other than to accompany the officer no matter how polite the officer was in phrasing his request." *Id.*

*Gonzalez* is inapposite. In fact, we specifically noted in *Gonzalez* the officer had reasonable alternatives available that rendered the coerced trip to the police station unreasonable. Among the officer's options were calling for a backup officer for assistance and seeking on-the-spot voluntary consent to search the vehicle. *Id.* at 1133. This is precisely how the officers in the present case handled the roadside investigation of Ms. Araujo and Ms. Martinez. We note also that Ms. Martinez's argument concerning the length of the stop is misleading because she includes as part of the alleged detention the time after which De-

fendants were arrested and transported to the Utah highway patrol station.

We find the facts here analogous to *United States v. Wong Ching Hing,* 867 F.2d 754 (2d Cir.1989). In *Wong Ching Hing,* the Second Circuit held that even where a traffic stop lasted longer than usual, no custodial interrogation existed where the officer questioned the operator about his destination and his possession of a large sum of cash stuffed in two suitcases. "[T]he extra time," according to the court, "was 'due primarily to the fact that the driver of the car had no registration and gave what were, to say the least, suspicious answers as to the ownership of the car.'" *Id.* at 756.

Nevertheless, Ms. Martinez argues the officer had no justification to detain them and was "obligated to issue a citation and let the driver and the passenger of the vehicle go." She claims the facts in the present case are indistinguishable from *Guzman,* where we held an officer's hunch that defendants possessed contraband was "'perhaps a tribute to his policeman's intuition, but it [was] not sufficient to justify, *ex post facto,* a seizure that was not objectively reasonable.'"[4] 864 F.2d at 1520 (quoting *United States v. Smith,* 799 F.2d 704, 708 (11th Cir.1986)). We find the facts of the present case fully distinguishable from *Guzman.*

In *Guzman,* a New Mexico state police officer stopped defendants' car for a seat belt violation. After finding defendants' rental contract for the car and the operator's license in order, *see id.* at 1514, he indulged in a lengthy series of questions "to determine whether [defendants] were 'hauling contraband in the vehicle.'" *Id.* Among other things, the officer inquired

---

**4.** Several factors in *Guzman* contributed to our decision to hold the detention and subsequent seizure unreasonable. Foremost, no objective circumstances existed suggesting defendants had committed any crime more serious than a seat belt violation. The officer asked for and received a proper license and registration. *Id.* at 1519. Rather than simply issue a warning or citation for the infraction, the officer proceeded to check the odometer of the car and confronted the occupants with an "intrusive" line of questioning. *Id.* Under the circumstances, we held

none of the occupants' actions were sufficient to arouse reasonable suspicion. *Id.* at 1520. We also noted the officer "was unjustified in assuming that a laborer and his wife could not possess $5,000 without arousing suspicion sufficient to justify a seizure." *Id.* (emphasis omitted). In short, the officer's continued questioning was not reasonably related in scope to the circumstances justifying the stop in the first instance. *See id.* at 1518–19; *Terry,* 392 U.S. at 19–20, 88 S.Ct. at 1879.

into where Guzman's wife (the passenger) was employed, their destination, their marriage date, and whether they were carrying large sums of money, weapons, or contraband. *Id.* After obtaining consent to search the vehicle, the officer discovered $5,000 hidden inside a shoe in the trunk and a package of cocaine behind the rear seat. *Id.*

The circumstances surrounding the officer's encounter with Ms. Araujo and Ms. Martinez were significantly different than those in *Guzman.* Testimony at the suppression hearing indicated the officer stopped the vehicle shortly before four o'clock in the afternoon for a traffic violation. The ownership of the vehicle immediately came into question as the license plate was expired, the title did not match the individual referred to by Ms. Araujo as the owner, Ms. Araujo could not identify the rightful owner by name, and she produced no registration. The occupants claimed they had borrowed the car from a friend, who in turn had borrowed the car from her boyfriend in Las Vegas. However, the title indicated the owner was a woman in Minnesota. The officer's initial telephone call to the previously named owner and a computer check were inconclusive as to the true ownership of the vehicle. We find these circumstances fully justified the officer's decision to call a second Spanish-speaking officer for assistance in briefly questioning Ms. Martinez to ascertain ownership of the vehicle.

The second officer arrived within ten minutes, briefly questioned the two occupants and conducted a search of the trunk.[5] Further questioning was warranted as Ms. Araujo and Ms. Martinez gave conflicting responses regarding their intended destination. Though the encounter lasted longer than a routine traffic stop, we believe it did not exceed permissible bounds given the uncertainty over whether Defendants lawfully possessed the vehicle.

We have reviewed the record and conclude that the officers had ample suspicion

to detain Ms. Araujo and Ms. Martinez in an effort to ascertain the true ownership of the vehicle. The officer's stop and initial detention of Ms. Araujo and Ms. Martinez was not only reasonable, but was carried out in a manner designed to impose minimal intrusion upon the Defendants. Accordingly, Ms. Araujo's and Ms. Martinez's statements, as well as the cocaine seized as a result of the investigation, did not result from an unreasonable detention and need not be suppressed.

IV

■ Next, Ms. Martinez contends that because the officers did not issue *Miranda* warnings until after their arrest even though they were detained within the meaning of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), all statements made during the roadside stop were the fruit of a custodial interrogation and should be excluded. In *Berkemer v. McCarty,* 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), the Supreme Court held law enforcement personnel may make a routine traffic stop and may ask a moderate number of questions to determine the occupants' identities "and to try to obtain information confirming or dispelling the officer's suspicions," *id.* at 439, 104 S.Ct. at 3150, without being required to advise the individuals of their *Miranda* rights, *id.* at 442, 104 S.Ct. at 3151. The reasoning behind this rule is a routine traffic stop is "presumptively temporary and brief," *id.* at 437, 104 S.Ct. at 3149, and the circumstances surrounding a typical traffic stop "are not such that the motorist feels completely at the mercy of the police," *id.* at 438, 104 S.Ct. at 3149.

■ As in *Berkemer,* we find nothing in the record indicating Ms. Araujo and Ms. Martinez should have received *Miranda* warnings at any point prior to their arrest. Neither Ms. Araujo nor Ms. Martinez were "in custody" or physically restrained. Instead, the officers merely detained Defendants for a brief period while they attempt-

---

5. Both officers considered the size of the trunk unusually small. We note also that at least one of the officers had received training to identify vehicles fixed with hidden compartments to carry drugs or money.

ed to ascertain whether either woman lawfully possessed the vehicle. Arrest or its equivalent is required before police must advise suspects of their *Miranda* rights. *See Pennsylvania v. Bruder,* 488 U.S. 9, 109 S.Ct. 205, 102 L.Ed.2d 172 (1988); *United States v. Jones,* 933 F.2d 807 (10th Cir.1991); *United States v. Pena,* 920 F.2d 1509 (10th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2802, 115 L.Ed.2d 975 (1991). The atmosphere surrounding the stop in question was not coercive and we see no violation of Ms. Araujo's or Ms. Martinez's Fifth Amendment rights requiring suppression of statements made at the scene.

## V

■ Ms. Martinez argues the district court erred by failing to grant her motion in limine to exclude evidence of her Colombian nationality. She asserts her nationality was irrelevant to the crime and unfairly prejudicial because cocaine trafficking, as a general rule, is synonymous with Colombia.

We review the district court's decision to admit or exclude evidence only for abuse of discretion. *United States v. Harmon,* 918 F.2d 115, 117 (10th Cir.1990). We cannot say the district court abused its discretion here.

Shortly after the stop, Ms. Araujo explained her passenger was a Colombian and could not speak English. This evidence was relevant to explain the need to call a second Spanish-speaking officer to question Ms. Martinez. Additionally, the district court noted the handwriting on items indicating Ms. Martinez's country of origin were relevant as they linked her to a tablet found in the vehicle indicating Defendants' ultimate destination. Furthermore, Ms. Martinez's passport, which inevitably disclosed her nationality, was relevant as it indicated she had left the country earlier in 1991, contrary to both Defendants' statements that they had not been separated for many years.

The evidence was not unfairly prejudicial as the judge properly limited its use by ordering the government not to "attempt to capitalize" on Ms. Martinez's nationality.

Ms. Martinez fails to convince us the evidence was unfairly prejudicial. We find no error.

## VI

■ Ms. Martinez received a sentence of 151 months incarceration, followed by a five-year term of supervised release. She argues the trial court erred in applying the United States Sentencing Guidelines by not granting her a downward adjustment of four points based on her claimed minimal role in the offense. *See* United States Sentencing Commission, *Guidelines Manual,* § 3B1.2.

■ The district court's decision whether to grant a downward adjustment under § 3B1.2 is a determination of fact which we will not disturb on appeal unless it is clearly erroneous. *United States v. Williams,* 923 F.2d 1397, 1404 (10th Cir. 1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2033, 114 L.Ed.2d 118 (1991). A defendant bears the burden of showing, by a preponderance of the evidence, entitlement to a downward adjustment. *United States v. McCann,* 940 F.2d 1352, 1359 (10th Cir. 1991).

Ms. Martinez has not shown that the district court's determination is clearly erroneous. She claims only that she was a courier in a transaction necessarily involving numerous other individuals. A defendant's role as a courier does not necessarily mean the individual was a minor participant. *McCann,* 940 F.2d at 1359. We reiterate that "[s]ection 3B1.2 turns on culpability, not courier status." *Id.* The record here indicates Ms. Martinez was a courier acting in concert with Ms. Araujo in an attempt to deliver over twenty kilograms of cocaine. Conduct involving such a large quantity of narcotics runs counter to the commentary accompanying § 3B1.2 which states a downward adjustment should be used "infrequently." U.S.S.G. § 3B1.2, comment. (n. 1). "It would be appropriate, for example, ... where an individual was recruited as a courier for a single smuggling transaction involving a small amount of drugs." *Id.* We hold the denial

of a mitigating role offense level reduction was not clearly erroneous.

## Conclusion

For the reasons stated above, the convictions and sentences of Ms. Araujo and Ms. Martinez are AFFIRMED.