25 F.3d 1058
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Edmundo Galindo ALVARADO, Defendant-Appellant.
 No. 92-3418.
 United States Court of Appeals, Tenth Circuit.
 April 28, 1994.
 ORDER AND JUDGMENT[1][2]
 
 1
 Before EBEL and KELLY, Circuit Judges, and COOK, District Judge.[3]
 
 
 2
 Mr. Alvarado appeals his conviction and sentence for (1) conspiracy to possess, and (2) possession, both with intent to distribute less than fifty kilograms of marijuana, 21 U.S.C. 846, 841(a)(1), (b)(1)(D), and (3) possession of a firearm during a drug trafficking offense, 18 U.S.C. 924(c)(1). He was sentenced to concurrent thirty month sentences on the first two counts, and sixty months consecutively on the last, with three years of supervised release. On appeal, Mr. Alvarado challenges (1) his continued detention by a state trooper after he received a traffic citation, (2) the voluntariness of his consent to search the vehicle, and (3) the sufficiency of the evidence to support the conspiracy and possession convictions. Our jurisdiction arises under 28 U.S.C. 1291. We affirm.
 
 Background
 
 3
 A Kansas state highway patrol trooper stopped Mr. Alvarado for speeding (71 mph in a 65 mph zone) and passing without signalling. The vehicle was owned by codefendant Toribio Olivas, Alvarado's brother-in-law, who was present as a passenger. Mr. Alvarado accompanied the trooper to the police vehicle while the trooper ran drivers' license and criminal history checks on the pair. Mr. Alvarado was cited for driving on a suspended license, as well as given warnings for speeding and passing without signalling.
 
 
 4
 Just as Mr. Alvarado was reaching for the door handle to exit the patrol car with citation and documents in hand, the trooper asked if he could ask a few more questions, to which Mr. Alvarado responded "yes." Mr. Olivas and Mr. Alvarado each were asked if marijuana, guns or large amounts of currency were contained in the vehicle. The trooper testified that Mr. Alvarado appeared to understand and responded "no". Mr. Alvarado was then presented with a consent to search form, looked at it and nodded his head. Mr. Olivas also was presented with a consent to search form, appeared to read it, and signed it where the trooper placed an "X." Mr. Olivas was asked to open the trunk; he retrieved the keys from the ignition and complied.
 
 
 5
 Meanwhile, another trooper had arrived with a drug sniffing dog, "Boss." A pistol was discovered between the driver and passenger seats, together with ammunition in the glove compartment and ashtray. The troopers looked beneath the car and noticed that the gas tank had been altered. After Boss alerted, the troopers dropped the gas tank and found several packages of marijuana in a secret compartment in the gas tank. Mr. Olivas and Mr. Alvarado were arrested.
 
 
 6
 The trooper testified that Mr. Alvarado indicated they were travelling from Odessa, Texas. At trial, Mr. Olivas testified at trial on Mr. Alvarado's behalf, claiming that Mr. Alvarado was unaware of any criminal activity. According to Mr. Olivas, Mr. Alvarado was under the impression that the pair was travelling to a concrete job in Kansas City.
 
 
 7
 In a previous order and judgment, we remanded this case to the district court for findings supporting its order denying suppression of the evidence. We also determined that Mr. Alvarado lacked standing to challenge the vehicle search, but that he could challenge the traffic stop and subsequent investigative detention, which involved a seizure of his person, and the seizure of the contraband as potential derivative evidence.
 
 Discussion
 
 8
 The district court found that the stop of the vehicle driven by Mr. Alvarado for speeding and passing without signalling was not pretextual. I R.S. doc. 114 at 7. The district court concluded that such a stop was objectively reasonable, and in accord with Kansas Highway Patrol policy of stopping for speeds of five miles-per-hour over the limit. The district court credited the state trooper's testimony that he routinely stops vehicles travelling 71 mph in a 65 mph zone and that pass without signalling. We have reviewed the record and conclude that the district court's findings are not clearly erroneous. See United States v. Harris, 995 F.2d 1004, 1005 (10th Cir.1993).
 
 
 9
 According to the district court, the officer issued the citation and warnings to Mr. Alvarado, returned the various documents, and then obtained codefendant Olivas's consent to search the vehicle. The district court characterized the interaction, which ultimately led to Mr. Olivas's consent to search the vehicle, as "an ordinary consensual encounter," which would be beyond the scope of the Fourth Amendment. See Florida v. Bostick, 111 S.Ct. 2382, 2387 (1991). "[A] reasonable person under these circumstances would believe that he was free to leave or disregard the officer's request for information." I R.S. doc. 114 at 8. Having determined that the seizure of Mr. Alvarado comported with the Fourth Amendment, we need not address his next claim concerning the voluntariness of his consent to search the vehicle. See United States v. Martinez, 983 F.2d 968, 974-976 (10th Cir.1992), cert. denied, 113 S.Ct. 1959, 2372 (1993).
 
 
 10
 Mr. Alvarado next challenges the sufficiency of the evidence to support his convictions, arguing that the government has failed to prove the requisite knowledge for conspiracy or possession with intent to distribute. We view the evidence and its inferences in the light most favorable to the government in deciding whether any rational trier of fact could find the Defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). For the conspiracy conviction, the government was required to prove an agreement to violate the law, Defendant's knowledge of the essential objectives of the conspiracy, Defendant's knowing and voluntary participation in the conspiracy, and an interdependence among the coconspirators. United States v. Riggins, 15 F.3d 992, 994 (10th Cir.1994). For possession of a controlled substance with intent to distribute, the government was required to prove the Defendant's knowing possession of the marijuana accompanied by the specific intent to distribute it. United States v. Hager, 969 F.2d 883, 888 (10th Cir.), cert. denied, 113 S.Ct. 437 (1992).
 
 
 11
 The government argues that the following facts support sufficiency: (1) Mr. Alvarado drove the car which had a secret compartment containing marijuana, (2) his passenger was his codefendant and brother-in-law, (3) when stopped, Mr. Alvarado was nervous and avoided eye contact; when the vehicle was searched, Mr. Alvarado repeatedly glanced at the front seat of the vehicle, (4) Mr. Alvarado claimed that he was going to Kansas City to do cement work, but he could not name the employer, and carried no cement tools or work clothes, (5) the car was registered in the name of Alvarado's mother-in-law, (6) Mr. Alvarado told the trooper that he had never been to Kansas City before, but the evidence reflected that Mr. Alvarado had accompanied Mr. Olivas to Kansas City a few weeks earlier when Mr. Olivas obtained a driver's license, (7) Mr. Alvarado owned the fully-loaded handgun found between the seats in the car; two clips, containing twelve and nine shells, were nearby, (8) Mr. Alvarado had purchased a radar detector a week previously, paying cash, and using a fictitious address, (9) Mr. Alvarado had shared driving responsibilities from Odessa, Texas to Kansas, and the modified gas tank would only hold six gallons, and the car would only get twelve to fifteen miles per gallon, (10) an empty gas can was found in the trunk, (11) Mr. Alvarado had been arrested previously in this car, (12) the car smelled of (and contained a can of) air freshener, which is often is used to mask the odor of marijuana, (13) Mr. Alvarado did not act surprised when the troopers discovered marijuana, and (14) Mr. Alvarado admitted knowledge that marijuana was in the vehicle, but later denied it when the troopers tried to tape the admission.
 
 
 12
 Had the proof on the last item been completely in accord with the government's characterization, this would be an easy case to resolve on sufficiency grounds. However, our review of the record reveals that the claimed admission occurred during a break in the interrogation of Mr. Alvarado when he asked to use the phone. The trooper doing the questioning testified:
 
 
 13
 Okay. Myself and Trooper Jimerson escorted Mr. Alvarado out of the room, and we were going to take him to a cell. He requested to make a phone call. We took him over to the phone, and I asked him in Spanish who he was going to call. He stated that he was going to call his brother-in-law. I asked him why he was going to call his brother-in-law, whether he was going to warn him about the arrest, and then asked him if the drugs were from his brother-in-law, and at that time he said, "Yes."
 
 
 14
 II R. 118-19. Another trooper described the exchange as follows: the questioning trooper "asked him [Mr. Alvarado] if that was to warn his brother-in-law because the brother-in-law owned the marijuana, and he said yes to that question." Id. at 73-74.
 
 
 15
 As stated by the questioner, the inquiry is a compound question. Mr. Alvarado could have responded "Yes" to mean that he wanted to warn his brother-in-law of his arrest, or "Yes" to mean that the drugs were from the brother-in-law, or both. The questioner did not include this exchange in his initial report " 'because [he] felt it could have been misunderstood;' " this admission was contained in a supplemental report at the request of the prosecutor. Id. at 131-32. When further interrogated, Mr. Alvarado continued to deny his knowledge of the marijuana; the subsequently taped transcript of the interrogation contains a response that he was attempting to call his brother-in-law to notify his wife that he had problems. Id. at 133.
 
 
 16
 Both troopers testified that the above exchange was in English, and both thought that Mr. Alvarado had incriminated himself. The question and response are ambiguous, but a rational jury could resolve that ambiguity in accordance with the troopers' characterization. We proceed to the circumstantial evidence.
 
 
 17
 Mr. Alvarado argues that merely because he had been arrested in the car a year earlier, or that an empty gas can was found in the trunk, does not warrant the inference that he was familiar with the range of the car unmodified and therefore was aware of the fuel tank modification or the marijuana secreted in the compartment. Continuing, it may well be that he lied about having been to Kansas City before, or about doing cement work in Kansas City, but, according to Mr. Alvarado, these facts do not support an inference that he was aware of the marijuana secreted in the gas tank. Finally, he urges us to discount other evidence, such as nervousness, furtive glances and later calm, which cannot substitute for a clear link showing knowledge.
 
 
 18
 Essentially, Mr. Alvarado argues that only circumstantial evidence consistent with many reasonable hypotheses of innocence supports these convictions. The test for sufficiency, however, is not one of excluding every reasonable hypothesis except guilt. See United States v. Hooks, 780 F.2d 1526, 1530 (10th Cir.), cert. denied, 475 U.S. 1128 (1986). On a sufficiency review, we cannot ignore the synergistic nature of the evidence which must be viewed as a whole. A rational jury could conclude beyond a reasonable doubt that Mr. Alvarado had knowingly joined with Mr. Olivas in transporting a load of marijuana from Odessa, Texas to Kansas City for distribution. Mr. Alvarado earlier had been to Kansas City to obtain a driver's license for Mr. Olivas. He was familiar with the vehicle before this trip, and surely would have been aware of the limited range of the vehicle after this cross-country trip. The jury also could consider the air freshener and the handgun in the vehicle as facilitating the endeavor, in light of Mr. Alvarado's explanation to the trooper that he was headed to Kansas City for the first time to do cement work. The government's proof has gone beyond mere presence near or association with a transporter of contraband, or mere presence near the contraband. See Riggins, 15 F.3d at 994; United States v. Espinosa, 771 F.2d 1382, 1397 (10th Cir.), cert. denied, 474 U.S. 1023 (1985).
 
 
 19
 AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order. 151 F.R.D. 470 (10th Cir.1993)
 
 
 [2]
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App. P. 34(a); 10th Cir. R. 34.1.9. The cause therefore is ordered submitted without oral argument
 
 
 [3]
 The Honorable H. Dale Cook, Senior United States District Judge for the Northern District of Oklahoma, sitting by designation