UNITED STATES of America, Plaintiff,

v.

**$600,000.00 IN UNITED STATES CURRENCY, Defendant.**

Civ. A. No. 94–1236–MLB.

United States District Court,
D. Kansas.

Dec. 14, 1994.

Annette B. Gurney, Office of the U.S. Atty., Wichita, KS, for plaintiff.

Sidney Dennis Bolton, claimant pro se and Stephen M. Joseph, Fleeson, Gooing, Coulson & Kitch, L.L.C., Wichita, KS, Wayne D. Meissner, Fitzgerald & Meissner, P.C., Austin, TX, and David B. Smith, English & Smith, Alexandria, VA, for claimant.

## ORDER

BELOT, District Judge.

Before the court are the following:

1) Claimant's response to order of November 2, 1994 (Doc. 27);

2) Sealed answers to questions; and

3) Government's reply to claimant's response (Doc. 32).

The pertinent facts of this case are set forth in this court's orders of October 24 and November 2, 1994 and will not be repeated in detail. However, certain facts need to be reprised to put into perspective the issues raised in the claimant's response.

The government's forfeiture complaint was supported by an affidavit which averred, in substance, that a car driven by the claimant was stopped for a traffic violation by a Kansas Highway Patrol trooper. The claimant had a Texas driver's license. The car was registered in Connecticut to another individual. The claimant denied having met the registered owner and was not positive whether the registered owner actually owned the car.

The trooper asked for and received permission to search the car. The trunk of the car contained a suitcase which the claimant said was his. When the trooper asked to look in the suitcase, the claimant responded that it was locked and that he did not know the combination. Upon further inquiry, claimant "guessed" he could look for the combination. When the claimant opened the suitcase, it was found to contain another suitcase which, when opened, was found to contain a large amount of cash tightly wrapped in small bundles. It is averred that the cash appeared to be packed in a way similar to that commonly used by drug traffickers.

When the trooper asked the claimant about the money, he responded that "it's something that I just picked up." The claimant told the trooper he owed someone some money and that he did not know how much money was in the suitcase. He also told the trooper he had a prior arrest for growing marijuana. Finally, a narcotics dog alerted to the presence of drugs in the car and the suitcase, although no drugs were found.

In response to the complaint, the claimant moved for a more definite statement. By its October 24 memorandum and order, the court denied the claimant's motion and directed him to file his answer to the complaint. The court also required the claimant to file a verified statement setting forth specific facts supporting his claim to the money. Instead of doing so, the claimant filed a motion asking the court "to clarify its request for a verified statement setting forth specific facts supporting his claim for the money. Claimant is uncertain what information the court is ordering claimant to provide and for what purpose." (Doc. 21).

Thereafter, by its order of November 2, the court in effect granted the claimant's motion and required the claimant to answer certain specific questions. In his response (Doc. 27), claimant has objected to the court's order as "unprecedented" and has accused the court of assuming the role of the United States Attorney by inquiring about his ownership of the money and questioning his

standing to pursue his claims that the trooper searched the vehicle without probable cause. Nevertheless, the claimant has submitted answers to the court in a sealed envelope with the request that the court review his response brief before taking any action with respect to the answers. The court has acceded to the claimant's request and will not open the envelope until it considers the merits of claimant's response.

The gist of the claimant's response seems to be that the court had no authority to inquire into his standing unless the United States Attorney first raised standing as an issue. He has cited several cases, but conspicuously absent is any case from the Tenth Circuit. The claimant apparently has overlooked or has chosen not to address *United States v. Martinez*, 983 F.2d 968 (10th Cir. 1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1959, 123 L.Ed.2d 662 and —— U.S. ——, 113 S.Ct. 2372, 124 L.Ed.2d 277 (1993). In that case, a Utah Highway Patrolman stopped a vehicle driven by a Ms. Araujo for a traffic violation. The car displayed Minnesota license plates which were expired. Ms. Araujo produced a valid New Jersey driver's license as well as a Minnesota title showing that a man named Selega has transferred ownership of the vehicle to a Ms. Clark of Minnesota. Ms. Araujo provided no registration. When the trooper asked Ms. Araujo who owned the car, she replied that she had borrowed it from a friend named Lopez in Las Vegas and that the car belonged to Ms. Lopez's boyfriend. The officer suspected that the car was stolen and asked what was in the trunk in an effort to test Ms. Araujo's ability to identify the contents. When the trunk was opened, the trooper observed certain aspects of the trunk which he considered out of the ordinary. He then contacted Mr. Selega who confirmed that he had sold the car to Cheryl Clark. However, the trooper was unable to locate Cheryl Clark to confirm her ownership. A computer check revealed no reports of a stolen vehicle matching the car. After further inquiry of Ms. Araujo and Ms. Martinez, the passenger, another search of the trunk was conducted and cocaine was discovered.

Both Ms. Araujo and Ms. Martinez moved to suppress the search and seizure. The Tenth Circuit's response to this challenge was as follows:

Next, Ms. Araujo and Ms. Martinez assert they have standing to challenge the vehicle search and subsequent cocaine discovery because their exercise of dominion over the car also conveyed to them a reasonable expectation of privacy over the contents of the vehicle. We disagree.

Because the standing issue remains " 'invariably intertwined' " with substantive Fourth Amendment privacy rights analysis, logic dictates we "determine 'whether the challenged search or seizure violated the Fourth Amendment rights of [the] criminal defendant who seeks to exclude the evidence.' " *United States v. Arango*, 912 F.2d 441, 445 (10th Cir.1990) (quoting *Rakas v. Illinois*, 439 U.S. 128, 139–40, 99 S.Ct. 421, 428, 58 L.Ed.2d 387 (1978)), *cert. denied*, [499] U.S. [924], 111 S.Ct. 1318, 113 L.Ed.2d 251 (1991).

In deciding whether a search has infringed upon protected constitutional rights of a particular defendant who seeks the exclusion of the resulting evidence, we examine two primary factors: "whether the defendant manifested a subjective expectation of privacy in the area searched and whether society would recognize that expectation as objectively reasonable." *Id.* The burden of showing standing to challenge a search and seizure rests with the defendant. *See Rakas v. Illinois*, 439 U.S. 128, 130 n. 1, 99 S.Ct. 421, 424 n. 1, 58 L.Ed.2d 387 (1978). Because passengers often have little or no privacy rights in a motor vehicle, we address each Defendant separately.

### A. Ms. Araujo's Standing

In *Arango*, we held that where a nonowner driver of a vehicle failed to present evidence he lawfully possessed a vehicle stopped for speeding, the driver had no reasonable expectation of privacy in the vehicle. 912 F.2d at 444–46. Although we recognized "that the proponent of a motion to suppress need not always come forward with legal documentation establishing"

lawful possession of the area searched, "the proponent must at least state that he gained possession from the owner or someone with the authority to grant possession." *Id.* at 445 (citing *United States v. Miller,* 821 F.2d 546, 548 & n. 2 (11th Cir.1987)). Ms. Araujo has not satisfied this burden.

Foremost, Ms. Araujo did not gain possession of the vehicle from the registered owner. Instead, she claimed to have borrowed the car from a friend named Ms. Lopez in Las Vegas, who in turn got the car from her boyfriend. In fact, Ms. Araujo could not even identify the name of the registered owner. Although affidavits indicated Defendants believed Ms. Lopez had authority to loan them the car, no evidence was produced at the suppression hearing to show Ms. Lopez had any authority to grant either Ms. Araujo or Ms. Martinez permission to possess the vehicle. Moreover, the owner listed on the title was not Ms. Lopez's boyfriend in Las Vegas but, rather, a woman in Minnesota.

Mere possession of the vehicle and the keys are not sufficient to confer standing. *United States v. Erwin,* 875 F.2d 268, 271 (10th Cir.1989) (citing *United States v. Sanchez,* 635 F.2d 47, 64 (2d Cir.1980)). Nevertheless, Ms. Araujo asserts she possessed luggage in the trunk, which conferred upon her an expectation of privacy over the trunk. We disagree. At best, given the uncertainty over the ownership of the vehicle, she may have possessed a reasonable expectation of privacy over the contents of the luggage, not over the trunk where the luggage was located.

In sum, Ms. Araujo simply did not produce evidence sufficient to establish a reasonable expectation of privacy in the particular area searched. *See United States v. Obregon,* 748 F.2d 1371, 1374–75 (10th Cir.1984) (defendant driver had no reasonable expectation of privacy in rental car by virtue of his mere physical possession where rental agreement provided the car had been rented by unrelated third party and no evidence existed of any arrangement with the rental company allowing defendant lawfully to drive the car); *United States v. Erickson,* 732 F.2d 788, 790 (10th Cir.1984) (defendant had no reasonable expectation of privacy in aircraft where he failed to demonstrate credibly he had authority from registered owner to possess, use, or fly the aircraft; *United States v. Smith,* 621 F.2d 483, 487–88 (2d Cir.1980) (driver of automobile did not have standing to contest search where he was not owner and failed to establish he lawfully possessed the vehicle), *cert. denied,* 449 U.S. 1086, 101 S.Ct. 875, 66 L.Ed.2d 812 (1981).

■ The similarities between the facts set forth in *Martinez* and those contained in the affidavit supporting the forfeiture complaint are apparent. In this case, as in *Martinez,* the claimant's explanation regarding the car's ownership and his right to be driving it was questionable. The claimant's response regarding the source of and right to possess the money was suspicious, to say the least. After all, common sense and experience suggest that most people do not drive around with $600,000 in the trunk and those who do (and who have a legitimate reason for doing so) logically have a better explanation than "I just picked it up."

■ Under the circumstances averred in the affidavit, whether viewed singly or in combination, *anyone* (except, apparently, the claimant's three lawyers) might reasonably be expected to have some legitimate questions about the claimant's unadorned assertion that "the property belongs to him." In the court's case, those legitimate questions motivated an inquiry regarding claimant's standing to bring his claim. The court rejects the claimant's argument that the court lacked authority, *sua sponte,* to inquire into the matter of standing under the circumstances present in this case and it also rejects the claimant's argument that claimant's bare allegation that the $600,000 "belongs to him" is sufficient to establish standing either under Article III or Rule C(6) of the Supplemental Rules for Certain Admiralty and Maritime Claims, 21 U.S.C. § 881(b). The claimant's reliance on cases such as *United States v. $38,000 in U.S. Currency,* 816 F.2d 1538 (11th Cir.1987) do not support claimant's argument and, in any event, miss the

point. The court's orders do not amount to a finding that the claimant has no standing. Rather, they simply constitute one means by which the court can reach and ultimately determine the standing issue in a manner that best serves the goals set forth in Federal Rules of Civil Procedure 1. As the government has pointed out in its response, (Doc. 32 at 6), Judge Weinstein has observed:

> In the words of Justice Frankfurter, 'Federal judges are not referees at prize-fights, but functionaries of justice.' Or as Judge Learned Hand explained: 'A judge is more than a moderator; he is charged to see that the law is properly administered, and it is a duty which he cannot discharge by remaining inert.' Wigmore explains that one aspect of this duty is the power to investigate as auxiliary to the power to decide; and the power to investigate implies necessarily a power to summon and to question witnesses.

Weinstein's Evidence, Vol. 3, ¶ 614[01] (1994 Edition).

Such was the court's purpose in requiring the claimant to provide the information ordered, nothing more and nothing less. Moreover, the claimant should not forget that the court directed him to answer specific questions only after he made what the court still considers to be a frivolous request that the court clarify its initial requirement that he set forth specific facts supporting his claim to the money.

■ Having dealt with the claimant's response, the court now has unsealed the claimant's responses to the court's questions. Some of the questions have been answered. However, in response to the court's questions requiring a detailed explanation of the source of the $600,000, documentary evidence showing claimant's ownership to the money and specific facts supporting his claim of ownership, the claimant has declined to answer, invoking the protections of the Fifth Amendment. This may be the claimant's prerogative, but it does not preclude disclosing claimant's responses to the government. Therefore, the claimant's verified answers

will be filed and will be furnished to the government.

IT IS SO ORDERED.