UNITED STATES of America, Plaintiff–Appellee,

v.

Jorge Enrique ARANGO, Defendant–Appellant.

No. 89–4084.

United States Court of Appeals, Tenth Circuit.

Aug. 28, 1990.

442

Susan L. Foreman (Michael G. Katz, Federal Public Defender, and Frances Smylie Brown, Asst. Federal Public Defender, Denver, Colo., with her, on the briefs), Asst. Federal Public Defender, Denver, Colo., for defendant-appellant.

Richard D. McKelvie (Dee V. Benson, U.S. Atty., with him, on the brief), Sp. Asst. U.S. Atty., Salt Lake City, Utah, for plaintiff-appellee.

Before TACHA, BALDOCK and BRORBY, Circuit Judges.

TACHA, Circuit Judge.

Jorge Enrique Arango was convicted of possession of a controlled substance with intent to distribute in violation of 21 U.S.C. section 841(a)(1). Arango appeals his conviction, arguing that the trial court erred in

denying his motion to suppress evidence of 100 kilograms of cocaine. We affirm.

## I.

On November 16, 1988, Utah Highway Patrol Trooper James Hillin was traveling west on Interstate 70 when he noticed a pick-up truck moving at a high speed in one of the eastbound lanes. Hillin turned on his rear radar and clocked the truck at 84 m.p.h., which exceeded the area speed limit of 65 m.p.h. After pulling the truck over, Hillin noticed that there were two persons in the cab, a man and a woman, and two small clothing bags in the bed of the truck. The driver gave Hillin a California license identifying him as Jorge Enrique Arango and a California registration listing the owner as Walter A. or Linda A. McConaughy. Hillin then asked Arango to exit the truck and come sit in the police car so that Hillin could talk with him about why he had been stopped and show him the reading on the radar gun.

While in the patrol car, Hillin asked Arango who the registered owner was. Arango replied that the registered owner was a friend, who had loaned the truck to him so that he could drive to Denver for a two week vacation. This answer aroused Hillin's suspicions because he thought that the two small bags of clothing could not contain enough clothing for a two week stay. Hillin asked Arango for the owners' phone number, but Arango told him that the owners did not have a phone. Hillin instructed his dispatcher to contact directory assistance in the owners' hometown to see if the owners had a phone number. The dispatcher reported that California directory assistance had no listing for the McConaughys. The dispatcher also informed Hillin that the National Crime Information Center (NCIC) computer did not indicate that the truck was stolen.

Hillin gave Arango a citation for speeding and then asked if there was any alcohol, weapons, or drugs in the truck. Arango indicated that there was not. Hillin asked if he could "look in the vehicle for any of those items." Arango gave his consent.

Meanwhile, Trooper Chester Johnson had arrived at the scene. The two troopers proceeded to search the truck. As Johnson walked up to the pick-up from behind, he noticed that the bed of the truck "didn't seem right" because it was very shallow. After lifting the tailgate corner of a rubber mat covering the bed of the truck, Johnson observed that the truck bed apparently had been modified. The section seams in the truck bed were wide and rough, as if they had been puttied in by hand. Bolts on the sides of the bed did not match the color of the pick-up, and the bed appeared to have been freshly painted. As they were examining the bed of the truck, Arango asked the officers what they were doing and whether anything was wrong. Hillin replied that they were looking at the bed of the truck. Arango said nothing more, and the officers continued with their search. By placing one hand on the bed of the truck and reaching around the side to the undercarriage, Johnson and Hillin discovered a gap of several inches existed. Both Johnson and Hillin took turns tapping on the bed of the truck, but neither of them could feel the taps on the other side, suggesting that the truck had a false bed. The troopers next removed the rubber mat and observed that the same modifications had been made to the other three corners of the truck bed floor. Hillin retained Arango's license and vehicle registration and told Arango that he had to follow him seven miles to the sheriff's office in Richfield to post bail for the traffic citation. At the suppression hearing, Hillin admitted that this request was a pretext and that the real reason that he asked Arango to return to Richfield was to continue searching the truck. Arango drove to Richfield with Hillin in front of him and Johnson following him.

When they arrived at the sheriff's office, Hillin asked Arango to sign a written consent to search form. Arango responded by stating: "I already told you, you could search, you could look in the truck; and you have looked." Hillin left and found Deputy County Attorney Paul Lyman. Arango told Lyman that he had already

granted his consent to search and questioned why the form was necessary. Lyman replied that "they'd like to have it in writing." Arango then asked what would happen if he signed the form and Lyman replied that they would search the bed of the pick-up and if they did not find anything, "you'll be on your way in fifteen minutes. If we find something, we'll go from there." Lyman also told Arango that if he did not sign the form, he would request a search warrant.

Arango signed the form, and several troopers then assisted Hillin and Johnson in dismantling the bed of the truck. The troopers found 100 kilograms of cocaine hidden in secret compartments underneath the bed in the four corners of the truck. Arango testified that he inferred from Lyman's comments that a judge would sign the form if he did not, that he did not feel he was free to leave, that no one explained his constitutional rights to him, that he was unfamiliar with his rights because he is a citizen of Colombia, and that he never would have signed the form had he known that the search of the truck included dismantling it.

Arango admitted at the suppression hearing that he had not told the truth when he told Hillin that he received the truck from the registered owners. Arango stated that he actually received the truck from a person known as Jesus Gonzalez, who paid Arango $2000 to drive the truck to Denver. Arango presented no evidence at the suppression hearing showing that Gonzalez had lawful possession of the truck from the registered owners. Arango testified that Gonzalez told him that there was money hidden in a secret compartment somewhere in the truck. Arango denied any knowledge of the cocaine.

In response to the government's argument that Arango lacked standing to contest the search, the district court observed: "There is some genuine question as to whether the defendant Jorge Enrique Arango has standing to challenge the search of the truck." The district court, however, found it unnecessary to resolve this issue, concluding that even if Arango had stand-

ing, he had 'consented to the search. Accordingly, the district court denied Arango's motion to suppress evidence of the cocaine. On April 10 and 11, the government tried Arango before a jury, which returned a guilty verdict.

## II.

When reviewing a district court's denial of a motion to suppress, we accept the district court's factual findings unless they are clearly erroneous. *United States v. Berryhill*, 880 F.2d 275, 280 (10th Cir. 1989). The ultimate determination of reasonableness under the fourth amendment, U.S. Const. amend. IV, is a question of law, which we review de novo. *United States v. McKinnel*, 888 F.2d 669, 672 (10th Cir. 1989).

Arango argues that the district court erred in denying his motion to suppress for the following reasons: (1) he has standing to contest the search; (2) his allegedly illegal detention on Interstate 70 fatally tainted his subsequent oral consent to search; (3) his allegedly illegal arrest and transportation to the sheriff's office fatally tainted his subsequent written consent; and (4) his written consent to search was invalid on its face.

█ Arango argues that he has standing to contest the search of the truck because the government failed to introduce any evidence demonstrating that Arango's possession of the truck was not lawful. Arango contends that his mere physical possession of the truck at the time of the search gives him standing to object to the search. We disagree.

In *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), the Supreme Court reformulated the issue of standing under the fourth amendment. *Rakas* concluded that the "Court's long history of insistence that Fourth Amendment rights are personal in nature has already answered many ... traditional standing inquiries, and we think that the definition of those rights is more properly placed within the purview of substantive Fourth Amendment law rather than within

that of standing." *Id.* at 140, 99 S.Ct. at 428. Because the issue of standing is "invariably intertwined" with substantive fourth amendment analysis, the most logical inquiry focuses solely on a particular defendant's rights under the fourth amendment. *Id.* at 139, 99 S.Ct. at 428. In reviewing a motion to suppress, we must thus determine "whether the challenged search or seizure violated the Fourth Amendment rights of [the] criminal defendant who seeks to exclude the evidence...." *Id.* at 140, 99 S.Ct. at 429. It is immaterial if evidence sought to be introduced against a defendant was obtained in violation of someone else's fourth amendment rights. Fourth amendment rights are personal and cannot be asserted vicariously. *See id.*

To ascertain whether a search has violated the rights of the particular defendant who seeks to exclude the resulting evidence, we consider two primary factors: whether the defendant manifested a subjective expectation of privacy in the area searched and whether society would recognize that expectation as objectively reasonable. *See Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979). To decide whether a reasonable expectation of privacy exists, we consider concepts of real or personal property law, bearing in mind that "arcane distinctions developed in property and tort law between guests, licensees, invitees, and the like, ought not to control." *See Rakas,* 439 U.S. at 143 & n. 12, 99 S.Ct. at 430 & n. 12. Although neither ownership nor lawful possession are determinative, they are often dispositive factors. "One of the main rights attaching to property is the right to exclude others ... and one who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of this right to

exclude." *Id.* at 143 n. 12, 99 S.Ct. at 430 n. 12 (citation omitted).

In *United States v. Erwin,* 875 F.2d 268, 271 (10th Cir.1989), application of these factors led to our conclusion that the defendant in that case did not have a reasonable expectation of privacy in an automobile in which he was a passenger. The evidence in *Erwin* suggested that the defendant had loaned the automobile in which he was riding to the driver. However, the automobile was registered to a third-party and we noted that the defendant failed to introduce any evidence "concerning where or from whom [he] obtained the vehicle or whether his apparent possession was lawful." *Id.* at 271. On this basis, we concluded: "The mere fact that defendant apparently transferred control of the vehicle to [the driver] is not sufficient to establish defendant's legitimate possession of the car or that he had a reasonable expectation of privacy in the area searched." *Id.*

The government contends that Arango did not have a reasonable expectation of privacy in the truck. We agree. Like the defendant in *Erwin,* Arango has failed to introduce evidence that his possession of the truck was lawful. Although we recognize that the proponent of a motion to suppress need not always come forward with legal documentation establishing that he lawfully possessed the area searched, *see U.S. v. Miller,* 821 F.2d 546, 548 & n. 2 (11th Cir.1987) (standing established by uncontradicted testimony of defendant that he borrowed car from friend), the proponent must at least state that he gained possession from the owner or someone with the authority to grant possession. *See id.* Arango concedes that he obtained the truck from Jesus Gonzalez and that he knew before Trooper Hillin stopped and questioned him that Gonzalez was not the registered owner.[1] Arango introduced no evidence showing that Gonzalez had gained

---

1. On direct examination, Arango stated that he believed that the person from whom he borrowed the vehicle was the owner. However, on cross-examination, Arango testified:

Q. And had you, prior to that time [when Arango was pulled over], looked at the registration in the glove compartment of the car?
A. Yeah, that's correct.

Q. And you, so you knew that it was registered in the name of Walter McConaughy.
A. Yes.
Q. And when Trooper Hillin asked about the ownership of the car, what did you tell him?
A. I said that it was a friend of mine, which I lied at that point, now.

lawful possession of the truck from the registered owners. *See Erwin,* 875 F.2d at 271. Because Arango failed to present any evidence that Gonzalez lawfully possessed the truck,[2] we conclude that Arango did not have a reasonable expectation of privacy in the truck. *See id.* at 271–72; *United States v. Obregon,* 748 F.2d 1371, 1374–75 (10th Cir.1984) (defendant driver had no reasonable expectation of privacy in rental car by virtue of his mere physical possession where rental agreement provided the car had been rented by unrelated third party and there was no evidence of any arrangement with the rental company allowing defendant lawfully to drive the car); *United States v. Erickson,* 732 F.2d 788, 790 (10th Cir.1984) (defendant had no reasonable expectation of privacy in aircraft where he failed to demonstrate credibly that he had authority from the registered owner to possess, use, or fly the aircraft); *United States v. Smith,* 621 F.2d 483, 487–88 (2d Cir.1980) (driver of automobile did not have standing to contest search where he was not owner and failed to establish that he lawfully possessed the vehicle), *cert. denied,* 449 U.S. 1086, 101 S.Ct. 875, 66 L.Ed.2d 812 (1981). We hold that Arango has failed to carry his burden of proof at the suppression hearing that the challenged search violated his fourth amendment rights. *See Rakas,* 439 U.S. at 130 n. 1, 99 S.Ct. at 423 n. 1 (burden of proving a reasonable expectation of privacy is on the proponent of a motion to suppress).

### III.

Arango also argues that we should grant his motion to suppress because the troopers seized evidence that was the result of his allegedly illegal detention and arrest. We disagree.

Although Arango cannot challenge the search of the truck, he can, of course, challenge his own seizure. *See United States v. Brignoni–Ponce,* 422 U.S. 873, 878, 95 S.Ct. 2574, 2578, 45 L.Ed.2d 607 (1975) ("Fourth Amendment applies to all seizures of the person, including seizures that involve only a brief detention short of arrest"); *Erwin,* 875 F.2d at 270 ("It is beyond dispute that a vehicle's driver may challenge his traffic stop...."). If Arango's seizure was illegal, evidence obtained as a result of the illegal seizure must be excluded as fruit of the poisonous tree. *See Erwin,* 875 F.2d at 269 n. 2.

### A.

To determine the validity of Arango's roadside detention, we balance the nature of the intrusion on fourth amendment interests against the importance of the governmental interests involved. *See United States v. Sharpe,* 470 U.S. 675, 685, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985) (validity of investigative *Terry* stop, short of arrest, determined by balancing governmental and fourth amendment interests). We must ascertain whether "the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *Id.* at 686, 105 S.Ct. at 1575. The actions of the police must be both justified at their inception and reasonably related to the circumstances which justified the interference at the outset. *Terry v. Ohio,* 392 U.S. 1, 19–20, 88 S.Ct. 1868, 1878–79, 20 L.Ed.2d 889 (1968). In *United States v. Guzman,* 864 F.2d 1512 (10th Cir.1988), we applied these principles to a traffic stop and concluded:

> An officer conducting a routine traffic stop may request a driver's license and vehicle registration, run a computer check, and issue a citation. When the driver has produced a valid license and proof that he is entitled to operate the car, he must be allowed to proceed on his way, without being subject to further delay by police for additional questioning. In order to justify "a temporary detention for questioning," the officer must have reasonable suspicion "of il-

---

**2.** We do not, of course, require Arango to produce legal documentation showing a chain of lawful custody from the registered owner to Gonzalez to himself. We emphasize, however, that Arango presented no evidence "concerning where or from whom [Gonzalez] obtained the vehicle or whether his apparent possession was lawful." *Erwin,* 875 F.2d at 271.

legal transactions in drugs or of any other serious crime."

*Id.* at 1519 (citations omitted). After the defendant in *Guzman* produced a valid license and a rental agreement authorizing him to drive the car, a police officer asked him a series of questions relating to his destination, his place of employment, his date of marriage, and the amount of money he was carrying. *Id.* at 1514. We concluded that this line of questioning was not justified either by the officer's observation that the defendant's pregnant wife looked nervous or by the officer's opinion that the amount of money the defendant told him he was carrying, $4,000, was more than the defendant could have reasonably saved in his occupation as a laborer. *Id.* at 1520.

Contrary to the defendant in *Guzman*, Arango never proved that he had lawful possession of the truck. Consequently, Hillin was justified in detaining Arango while he tried to contact the registered owners. *See Obregon*, 748 F.2d at 1376 (continued detention justified where car rented in another's name, driver not listed as authorized operator, and driver unable to provide means of contacting lessee). We also conclude that Hillin's single inquiry relating to the transportation of contraband was justified by Arango's inability to provide credible proof that he lawfully possessed the truck, combined with the inadequate amount of luggage in the truck for a two week vacation. Together, these two factors provided reasonable suspicion that the truck was being used to carry contraband. Hillin's question "accounted for but a moment of defendant's brief detention and was based upon specific and articulable facts and rational inferences." *United States v. Espinosa*, 782 F.2d 888, 891 (10th Cir.1986) (brief inquiry concerning transportation of drugs justified by the two defendants' hesitation prior to answering questions, their temporary license plate, the fact that the defendants were traveling from a known drug source area, and the relative lack of luggage carried by the defendants although they stated they were vacationing). We hold that Hillin's brief detention of Arango on the interstate was supported by reasonable suspicion.

## B.

Arango next argues that he was illegally arrested when Hillin told him to follow him to the Richfield sheriff's office. We disagree.

Once the police told Arango to come with them to the sheriff's office, the line between detention and *de facto* arrest was crossed. *See United States v. Gonzalez*, 763 F.2d 1127, 1132 (10th Cir.1985) (where police officer, while holding driver's license, registration, and title, asked defendant to go to police station, "defendant had no reasonable choice other than to accompany the officer no matter how polite the officer was in phrasing the request"); *United States v. Recalde*, 761 F.2d 1448, 1452 (10th Cir.1985) (defendant was arrested where police still held license, registration, and speeding ticket and defendant drove to police station, sandwiched between two police cars, for further questioning). We are satisfied, however, that there was probable cause to arrest Arango for the transportation of contraband. By observing the bed of the truck and knocking on it, Hillin and Johnson discovered evidence indicating that the truck had a hidden compartment running underneath the bed. We hold that this evidence, together with the inadequate amount of luggage for Arango's purported two-week vacation, supplied probable cause to arrest Arango.[3]

## IV.

Because Arango's arrest was supported by probable cause and because Arango lacks standing to challenge the search of the truck, we need not decide whether Arango voluntarily consented to the search of the truck at the roadside and at the Sher-

---

3. Our decision is consistent with *Recalde*, in which we concluded that there was no probable cause to arrest where someone had tampered with the screws in the interior molding of a car, which led a police officer to take apart the molding under which he found contraband. *Recalde*, 761 F.2d at 1452. The evidence of a secret compartment in this case is far more probative of illegal activity than the scratched screws at issue in *Recalde*.

iff's office. The judgment of the district court is AFFIRMED.