UNITED STATES of America, Plaintiffs,

v.

Dracy LaMont McKNEELY; Andrew Ellis; and Torjano Akines, a/k/a Alandis Bennett, Defendants.

No. 92–CR–170A.

United States District Court, D. Utah, C.D.

Jan. 6, 1993.

Ronald J. Yengich, Yengich, Rich & Xaiz, Salt Lake City, UT, for defendant Ellis.

Deirdre Gorman, Farr, Kaufman, Sullivan, Gorman & Perkins, Ogden, UT, for defendant Bennett.

## ORDER GRANTING DEFENDANTS' MOTION TO SUPPRESS EVIDENCE AND DENYING DEFENDANTS' MOTION TO SUPPRESS STATEMENTS

ALDON J. ANDERSON, Senior District Judge.

This matter came before the court on Defendants' Motion to Suppress Evidence and Statements. The court heard oral argument on September 18, 1992. After reviewing the videotape of the police stop in question, the court heard further oral argument on October 15, 1992. At the second hearing, counsel for the United States requested leave to submit supplemental briefs. Given the subtleties of these matters, the court agreed that further briefing was appropriate. The court, having reviewed the record, including the supplemental briefs, and examined the applicable law, grants Defendants' Motion to Suppress Evidence, but denies Defendants' Motion to Suppress Statements.

### I. BACKGROUND

Defendants are charged with possession of a mixture or substance containing cocaine base with intent to distribute, a violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(A) and 18 U.S.C. § 2. McKneely and Ellis are further charged with carrying a firearm during a drug trafficking crime, a violation of 18 U.S.C. § 924(c) and 18 U.S.C. § 2. The charges stem from a vehicle stop in Sevier County in which Sevier County Deputies seized approximately one pound of crack cocaine and a loaded gun. Defendants Ellis, McKneely, and Bennett, bring Motions to Suppress Evidence and Statements.[1] Because the various motions to suppress arise from the same operative facts and implicate the same principles, the

Bruce C. Lubeck, Asst. U.S. Atty. for Utah, Salt Lake City, UT, for plaintiff.

Robert L. Booker, Booker & Whatcott, Salt Lake City, UT, for defendant McKneely.

1. Defendant McKneely also brings the following additional motions: (1) Motion for Early Production of Statements of Government Witnesses; (2) Motion to Compel Discovery or for Dismissal; (3) Motion to Permit Inspection of Physical Evidence; and (4) Reservation of Right to File Other Motions.

court will treat them together. The record reveals the following facts.

On the morning of June 15, 1992, Sevier County Sheriff's Deputy Phil H. Barney, a veteran of twenty-six years patrolling the highways of Utah and with extensive experience apprehending suspected drug traffickers,[2] was westbound on Interstate 70, when he clocked an eastbound vehicle going seventy-one miles per hour in a sixty-five mile per hour zone. He turned, followed the vehicle for a short distance, then turned on his emergency equipment to stop the vehicle. As he turned on his emergency lights, a video camera attached to the front inside roof of his patrol car automatically activated and videotaped the entire stop from that point. Deputy Barney also wore a body microphone that recorded all conversations within a certain distance. The court has reviewed the audio and video tapes in their entirety.

As Barney approached the vehicle, he found Defendant Ellis in the driver's seat, Defendant McKneely in the front passenger's seat, and Defendant Akines in the rear passenger's seat. Deputy Barney did not inform Defendants why he had stopped them, but asked Ellis for a driver's license. Ellis had no driver's license. Barney, however, ascertained that the vehicle was rented in McKneely's name and that McKneely, a licensed driver, had given Ellis permission to drive. Two points are significant about this portion of the stop: (1) Barney smelled a "chemical" odor, but could not identify it; (2) he found no cause for suspicion about either McKneely's driver's license or the rental agreement.[3]

Barney attempted to run a computer check on the vehicle and on the occupants, but was unable to complete the check because the computer system that holds the relevant records, Triple I, was not working. Therefore, after his abortive computer check, Barney issued a citation to Ellis and returned the rental contract to McKneely.[4] Barney then inquired whether there were guns or drugs in the vehicle. After receiving a negative response, he asked if he could search the car. The parties dispute whether consent was given. Barney testified at the hearing that McKneely consented to the search. His contemporaneous police report indicates that it was Ellis who consented to the search. The tape does not reveal an audible consent. Barney did not advise Defendants that they did not have to consent to the search.

In any event, Defendants exited and stepped to the rear of the vehicle. Barney then proceeded to search the interior of the car. When he could not open the glove compartment with the ignition key, he asked Defendants if they had the key. They responded that they did not. During his search, another officer arrived on the scene and stood watch over Defendants. When Barney pulled Defendants' luggage from the rear of the station wagon and began to open the bags and dump them, Defendants requested that Barney discontinue the search. Barney indicated that if they did not consent to a search of the bags, he would obtain a warrant.

Barney then began the one and one-half hour process of obtaining the warrant. Barney could not reach the county attorney on his mobile telephone; therefore, he gave information to the county dispatcher who relayed the information to the county attorney, Don Brown. Barney stated two bases for probable cause: (1) a strong, unidentifiable chemical smell allegedly originating in the vehicle; and (2) no key for the glove compartment. The actual warrant included three additional grounds: (1) that Deputy Barney had stopped the vehicle for a traffic violation; (2) that one of the individuals in the vehicle had a criminal record; and (3)

---

**2.** Barney has been involved in over two hundred drug stops.

**3.** There was testimony at the hearing concerning a discrepancy between the license number on the rented vehicle and the license number as listed in the rental agreement. This discrepancy was not discovered by Barney until later; there-fore, it cannot serve as a basis for probable cause.

**4.** At this point in the stop, Barney had not yet informed Defendants of the reason why he stopped them. Apparently, Barney cited Ellis for driving without a license and issued a warning for speeding.

that Barney had many years of experience investigating narcotics offenses, and based on his experience, he believed that Defendants were transporting drugs. A deputy who was present at the sherriff's office signed Barney's name to the affidavit supporting the warrant. Barney did not authorize Larsen to sign for him, but testified that this was usual county procedure.

The county attorney arrived with the warrant about an hour and a half later. During this time, Defendants sat on the tailgate of the rented station wagon. When the warrant arrived, Barney and other officers now assembled on the scene searched the vehicle and found approximately one pound of crack cocaine and a loaded firearm. Barney later smelled the cocaine in court and testified that it smelled the same as the odor emanating from the vehicle on the day of the search.

After the cocaine was discovered, Defendants were handcuffed and given their *Miranda* warnings. Barney then offered a deal to Defendants: if they would make a controlled delivery of the cocaine, the police would work with them to reduce the charge to a misdemeanor. Defendants were then transported to the Sevier County Jail in Richfield, Utah, and booked. During the booking process, Barney again offered a deal to Defendants. While at the jail, McKneely, despite a posted warning that all phone calls may be monitored or recorded, made a telephone call which was recorded.

During the course of June 15, Barney had several conversations with David A. Paull, agent for the Drug Enforcement Agency. Barney and Paull were attempting to coordinate prosecution efforts. Late in the afternoon of the fifteenth, Paull informed Barney that he would drive to Richfield the following day to transport Defendants to Salt Lake City for prosecution. For some unexplained reason, Barney, having full knowledge that Paull would be transporting Defendants to Salt Lake City, arrived at the jail the morning of the sixteenth at 6:00 A.M., loaded Defendants into his patrol car, and, ostensibly because the sheriff's department was shorthanded, be-

gan to transport Defendants to Salt Lake City. After having travelled a short distance, Barney again offered a deal to Defendants. This time, Akines and Ellis agreed. Barney then returned to Richfield, where Defendants were given *Miranda* warnings and interrogated by the county attorney. Later the same day, Paull arrived from Salt Lake. He also interrogated defendants after giving them *Miranda* warnings. Later that day, Paull transported Defendants to Salt Lake City, where they were indicted. They have been held in custody from that time until the present.

## II. DISCUSSION

The court will first address Defendants' Motion to Suppress Evidence and will follow with a discussion of their Motion to Suppress Statements.

### A. *Motion to Suppress Evidence*

Defendants seek to suppress evidence of the government's seizure of the cocaine and the handgun. In support of their motions, Defendants advance the following arguments: (1) that they have standing to contest the search of the vehicle; (2) that the traffic stop was pretextual in violation of their Fourth Amendment rights; (3) that Barney did not have reasonable suspicion to justify detaining them for two hours; (4) that they did not consent to the search; and (5) that the search warrant is not supported by probable cause. These arguments track the analysis the Tenth Circuit has set forth for determining the validity of a vehicle stop. *See United States v. Werking*, 915 F.2d 1404 (10th Cir.1990).

*1. Standing*—The Fourth Amendment to the United States Constitution protects citizens against unreasonable searches and seizures. Evidence seized during an unreasonable search may be suppressed. While the government has the burden of proving the legality of the evidence obtained, Defendants are obliged to show that they have standing to challenge the search of a vehicle. *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). The government acknowledges that McKneely, the renter of the vehicle, and Ellis, the driver

of the vehicle, have standing to challenge the search, but contends that Akines does not have standing.

Because Fourth Amendment protection against unreasonable search and seizure is personal, a party may not assert the rights of others, but rather must establish the violation of his own rights. To establish a personal right, a party must have standing to challenge the search. Standing is another way of saying that the claimant had a reasonable expectation of privacy in the premises searched. Therefore, to establish standing, Akines must show that he had a subjective expectation of privacy in the vehicle and that such expectation is one that society recognizes as reasonable. *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *United States v. Arango*, 912 F.2d 441, 445 (10th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1318, 113 L.Ed.2d 251 (1991).

■ In assessing whether Akines had a reasonable expectation of privacy, ownership or lawful possession of the vehicle may be dispositive factors. *Arango*, 912 F.2d at 445. " '[O]ne who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of his right to exclude.' " *Id.* (quoting *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978)). In *Rakas*, the United States Supreme Court held that passengers of a searched vehicle did not have "any legitimate expectation of privacy in the glove compartment" of that vehicle. *Rakas*, 439 U.S. at 148, 99 S.Ct. at 433. Neither can it be said that Akines, because he is charged with a possessory offense, has automatic standing. *See United States v. Salvucci*, 448 U.S. 83, 91, 100 S.Ct. 2547, 2552–53, 65 L.Ed.2d 619 (1980) ("[L]egal possession of a seized good is not proxy for determining whether the owner had a Fourth Amendment interest, for it does not invariably represent the protected Fourth Amendment interest."). The Court in *Salvucci* reaf-

firmed that legitimate expectation of privacy is the lodestar for determining standing to assert a Fourth Amendment violation. *Id.* at 91–92, 100 S.Ct. at 2552–53. Akines has not presented evidence from which the court can conclude that he had a legitimate expectation of privacy in the vehicle. Consequently, the court concludes that Akines has no standing to challenge the search.[5]

■ *2. Was the Stop Pretextual?* — As noted, the Fourth Amendment to the United States Constitution protects citizens against unreasonable searches and seizures. The stopping of a vehicle and the detention of its occupants may constitute a limited seizure within the meaning of the Fourth Amendment. *See United States v. Walker*, 933 F.2d 812, 815 (10th Cir.1991). The initial step in assessing the validity of a traffic stop is whether the stop was pretextual. *United States v. Guzman*, 864 F.2d 1512, (10th Cir.1988). "[P]retextual use of police power may violate the Fourth Amendment." *Id.* at 1517. Pretext is judged by whether "under the circumstances a reasonable officer would have made the stop." *Id.* In other words, did the officer deviate from his usual routine in making the stop? *Id.* at 1518.

Defendants' vehicle was stopped for a speeding infraction. Barney clocked Defendants at seventy-one miles per hour in a sixty-five mile per hour zone. Although the parties did not elicit testimony concerning the general practice of the Sevier County Sheriff's Department, Barney testified that, as a general practice, he would stop vehicles travelling six miles over the speed limit. Consequently, this court is satisfied that the stop was not pretextual, because Barney acted reasonably and because it appears that a reasonable officer would have so acted under similar circumstances. Moreover, the court does not find that Barney acted with some other motive, such as the race of the Defendants, in making the stop. *Id.* at 1517–18. Therefore, the court

---

5. Although the court concludes that Akines cannot challenge the legality of the search, "he can, of course, challenge his own seizure ... If [his] seizure was illegal, evidence obtained as a result of the illegal seizure must be excluded as fruit

of the poisonous tree." *United States v. Arango*, 912 F.2d 441, 446 (10th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1318, 113 L.Ed.2d 251 (1991).

finds that the initial stop was not pretextual.

*3. Was the Detention of Defendants Illegal?*—Whether a vehicle stop and detention violates the Fourth Amendment depends on the type of stop. There are three types of citizen encounters with law enforcement officers: (1) a consensual encounter not prohibited by the Fourth Amendment; (2) an investigative, or *Terry*-type, detention that is justified when supported by articulable facts that give rise to a reasonable suspicion; and (3) a detention that is lengthy and highly intrusive and that requires probable cause. *See United States v. Werking*, 915 F.2d 1404, 1407 (10th Cir.1990). The initial traffic stop was an investigatory detention that was supported by articulable facts that gave rise to a reasonable suspicion, namely that the vehicle was speeding. *See Werking*, 915 F.2d at 1407. After Barney returned McKneely's driver's license and the vehicle rental agreement and issued the citation, the initial investigatory detention ceased. *Id.* at 1408. There was no impropriety up to the point when Barney issued the citation. Further detention, however, was improper unless based on a reasonable suspicion or on consent. Therefore, this court must determine whether Officer Barney had a reasonable suspicion to justify further investigatory detention or whether Defendants consented to the search.

The Tenth Circuit has held that once an officer making a routine traffic stop has returned the driver's registration and license and issued the citation, if the driver has objective reason to believe that he cannot end the conversation with the officer and proceed on his way, he is illegally detained unless the officer has reasonable suspicion to detain the driver. *United States v. Turner*, 928 F.2d 956, 959 (10th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 230, 116 L.Ed.2d 187 (1991). The officer may question the driver about weapons or drugs or may search the vehicle only if he has reasonable suspicion that a criminal offense is occurring. *United States v. Werking*, 915 F.2d 1404 (10th Cir.1990); *United States v. Turner*, 928 F.2d 956 (10th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 230, 116 L.Ed.2d 187 (1991).

Whether the officer has a reasonable suspicion justifying further detention of a driver is a question of fact to be adduced from the totality of the evidence presented at the hearing. *Turner*, 928 F.2d at 959. Reasonable suspicion is based on what the reasonable officer would do in similar circumstances. *Id.*[6] In assessing whether Barney had reasonable suspicion to justify further detention, the court need only look at the facts that he knew at that moment. When Barney issued the citation, he had McKneely's valid driver's license and the rental agreement. He was not aware of any inconsistency in these documents. Further, because Triple I was inoperative, Barney was not apprised that any of the Defendants had a criminal record. Finally, although Barney smelled a chemical smell in the car, he could not identify this smell. An unidentifiable smell alone is not sufficient to create a reasonable suspicion. Moreover, Barney has been involved in over 200 drug stops. With such substantial experience, it is unusual that he could not identify the odor. He now claims that he smelled the cocaine. Whatever his current assessment of the smell, the court finds, after viewing the videotape of the detention and considering the totality of the circumstances, that Barney did not

6. The Tenth Circuit also has addressed the constitutionality of a detention effectuated before the officer has returned the driver's license and issued the citation. *United States v. Guzman*, 864 F.2d 1512 (10th Cir.1988); *United States v. Walker*, 933 F.2d 812 (10th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1168, 117 L.Ed.2d 414 (1992). The *Walker* court, following *Guzman*, held that an officer making a traffic stop may request a driver's license and vehicle registration, may run a computer check on the driver and the vehicle, and may issue a citation. 933 F.2d at 816. However, a detention not reasonably related in scope to the circumstances that justified the interference in the first place is unreasonable under the Fourth Amendment. *Id.* Accordingly, the officer may only detain a driver beyond the scope of the original stop if he has reasonable suspicion to do so. Again, whether the officer's suspicion is reasonable is a factual determination to be adduced from the evidence presented at the hearing.

have a reasonable suspicion to justify further detention of Defendants.

 Even if no reasonable suspicion existed for further detention, "consent given following a Fourth Amendment violation may be valid if it is in fact voluntary." *Walker*, 933 F.2d at 817 (citing *Guzman*, 864 F.2d at 1520). "A consensual encounter is simply the voluntary cooperation of a private citizen in response to non-coercive questioning by a law enforcement official." *Werking*, 915 F.2d at 1408. "Because an individual is free to leave at any time during such an encounter, he is not 'seized' within the meaning of the fourth amendment." *Id.* at 1408 (citations omitted). "An individual has been seized only if he has an objective reason to believe that he was not free to end his conversation with the law enforcement official and proceed on his way." *Id.* (citations omitted). Such an objective reason might arise if there is an overbearing show of authority: for example, if there were several officers present, if the officer displayed his weapon, or if the language and tone of voice of the officer indicated that compliance by the citizen is compelled. *Id.* The court's consideration of the evidence in this case suggests none of the indicia that might give rise to a reasonable belief that Defendants were not free to leave. Barney's request to search the vehicle was not made in a threatening or overbearing manner, he did not touch Defendants or display a weapon, and other officers were not present. *Id.* at 1409. Thus, the court finds that Defendants were free to leave after Barney returned the papers and issued the citation. *Id.*

Finally, Defendants contend that they did not voluntarily consent to the search. "Voluntariness is a question of fact to be determined from the totality of the circumstances." *Id.* The Tenth Circuit applies three factors in assessing whether consent is voluntary: (1) whether consent was specific and unequivocal; (2) whether consent was coerced or made under duress; and (3) whether evidence of consent is clear and convincing. *Werking*, 915 F.2d at 1410 (factors taken from *Brown v. Illinois*, 422

U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975)).

The court finds that none of these factors were present and that Defendants did not, in fact, consent to the search. First, consent was neither specific nor unequivocal. When Barney requested to search the vehicle, the videotape and tape recording recorded no audible consent from Defendants. Barney contends that one of Defendants answered affirmatively to his request; however, he is uncertain whether Ellis or McKneely so responded. Whether Defendants responded or not, the court finds that their showing of consent does not meet the level necessary to establish voluntary and intelligent consent. Likewise, consent involved coercion or duress. Although the court did not find that Barney's actions were threatening, Defendants apparently felt threatened. This is evidenced by Ellis's response as he exited the vehicle: he raised his hands as if he thought he was under arrest. This action bespeaks a feeling of duress, not a voluntary consent. Finally, with such evidence weighing against consent, evidence of consent is neither clear nor convincing. Accordingly, the initial search of the vehicle and detention of Defendants was constitutionally flawed inasmuch as it was not based on reasonable suspicion or on consent. Therefore, Defendants' Motion to Suppress must be granted as to Ellis and McKneely, the two Defendants with standing to challenge the search. Further, although Akines cannot challenge the legality of the search, *see supra* note 6, "he can, of course, challenge his own seizure." *United State v. Arango*, 912 F.2d 441, 446 (10th Cir.1990). Because his "seizure was illegal, evidence obtained as a result of the illegal seizure must be excluded as fruit of the poisonous tree." *Id.* Therefore, the Motion to Suppress Evidence must likewise be granted as to Akines.

*4. Was the Warrant Supported by Probable Cause?* —The initial detention allegedly gave rise to probable cause. The court has found that this detention was constitutionally impermissible. However, even if the initial detention was permissible, the warrant was not supported by

probable cause. As previously discussed, there are three types of searches: (1) consensual searches; (2) investigatory detentions that require reasonable suspicion; and (3) intrusive searches that require probable cause. A search based on probable cause requires a warrant.[7] After Defendants demanded that Barney cease the search, Barney detained Defendants for another one and a half hours while he obtained a search warrant. Thus, Barney crossed the bridge that separates an investigatory detention from a lengthy, intrusive detention that requires probable cause. The government argues that the search warrant was supported by probable cause, or alternatively, that even if the search warrant was invalid, it was validated by the good faith exception.

Defendants contend that the warrant was defective because the information presented to the magistrate who issued the warrant was conclusionary. Because it was conclusionary, Defendants argue that the magistrate acted merely as a rubber stamp for Barney and did not judge probable cause on independent facts. Therefore, they argue that the warrant is invalid and that the evidence derived from the search should be excluded. Further, although Defendants acknowledge that an officer may rely in good faith on an invalid warrant, they argue that good faith must be objectively reasonable and that, in this case, the warrant was so deficient that reliance on the warrant was unreasonable. Accordingly, to permit the evidence would seriously erode the protection provided by the Fourth Amendment.

Whether a search warrant is supported by probable cause involves an analysis of the totality of the circumstances. See *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1982). "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set

forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238, 103 S.Ct. at 2332 (1982). "And the duty of the reviewing court is simply to ensure that the magistrate had 'a substantial basis for ... conclud[ing]' that probable cause existed." *Id.* (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)); *see also United States v. Lacey*, 969 F.2d 926 (10th Cir.1992). "Reasonable minds may differ on the question whether a particular affidavit establishes probable cause.... [T]he preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination." *United States v. Leon*, 468 U.S. 897, 914, 104 S.Ct. 3405, 3416, 82 L.Ed.2d 677 (1983) (quoting *Spinelli v. United States*, 393 U.S. 410, 419, 89 S.Ct. 584, 591, 21 L.Ed.2d 637 (1969)).

In assessing probable cause, "after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review." *Gates*, 462 U.S. at 236, 103 S.Ct. at 2331. Rather, the court should interpret the affidavit in a common sense manner. *Id.* The court, however, will not accord deference to the magistrate's determination in three situations: (1) if the affidavit is knowingly or recklessly false; (2) if the magistrate acts as a rubber stamp for the police; or (3) if the warrant does not provide a substantial basis for probable cause. *See Leon*, 468 U.S. at 914–15, 104 S.Ct. at 3416–17.[8]

First, to find that the warrant and supporting affidavit provide a substantial basis for concluding that there is probable cause, "[s]ufficient information [must] be presented to the magistrate to allow that official to determine probable cause." *Id.* at 915, 104 S.Ct. at 3416. Barney's affidavit states five grounds for probable cause: (1) that he made a traffic stop;[9] (2) that he smelled a chemical odor and found no key

---

7. Defendant Akines has standing, as do the other Defendants, to challenge the lawfulness of this detention. *See supra* note 6.

8. Defendants do not contend that the warrant is knowingly or recklessly false.

9. Making a traffic stop provides no basis for probable cause.

to open the glove box or a compartment located in the rear of the vehicle; (3) that one of the Defendants had a criminal record; and (4) that he has many years' experience in the investigation of narcotics and transportation of controlled substances.

Pertinent to this court's inquiry are Barney's experience, the chemical smell, Defendants' criminal records, and the locked glove box. As early as 1972, the Tenth Circuit established that probable cause exists when experienced officers recognize the plain smell of marijuana. *See United States v. Anderson,* 468 F.2d 1280, 1282–83 (10th Cir.1972). This view has been reaffirmed on numerous occasions. *See United States v. Loucks,* 806 F.2d 208 (10th Cir.1986); *United States v. Merryman,* 630 F.2d 780 (10th Cir.1980); *United States v. Montgomery,* 620 F.2d 753 (10th Cir.1980), *cert. denied,* 449 U.S. 882, 101 S.Ct. 232, 66 L.Ed.2d 106 (1980); *United States v. Sperow,* 551 F.2d 808 (10th Cir.1977), *cert. denied,* 431 U.S. 930, 97 S.Ct. 2634, 53 L.Ed.2d 245 (1977); *United States v. Stricklin,* 534 F.2d 1386 (10th Cir.1976), *cert. denied,* 429 U.S. 831, 97 S.Ct. 92, 50 L.Ed.2d 95 (1976); *United States v. Bowman,* 487 F.2d 1229 (10th Cir.1973).

Similarly, the Tenth Circuit has extended the rule set forth in *Anderson* and found probable cause in a situation where an experienced officer smelled an ether-like substance that he associated with the transport of bulk cocaine. *United States v. Lopez,* 777 F.2d 543, 551 (10th Cir.1985). Significant to the finding of the *Lopez* court was the presence of another indicia, loosened speaker panels, that "could cause a prudent and trained officer to reasonably believe a crime was being committed." *Id.* By contrast, however, in *United States v. Gonzalez,* 763 F.2d 1127 (10th Cir.1985), the Tenth Circuit upheld a trial court's finding of no probable cause. *Gonzalez* involved an officer who, when making a traffic stop, smelled a deodorizer, but could not articulate a more specific cause for suspicion other than bad intuitions about the driver. *Id.* at 1129. The trial court found that the odor was not an equivocal signal that led him to believe that the car carried drugs. *Id.* at 1131 n. 2.

Application of *Anderson* and *Gonzalez* to the present inquiry favors Defendants. Barney has years of experience investigating drug trafficking offenses, including involvement in over two hundred arrests. Yet, despite his experience, he could not affirmatively identify the odor more than to say that it was a chemical smell. Barney's inability to provide a more specific or articulable ground for suspicion renders this odor ineffective to support probable cause. So too, the declaration in Barney's affidavit that one of Defendants had a criminal record. At 8:20, the morning of the stop, Barney asked the dispatcher to run a check of Defendants in the Triple I system. The dispatcher attempted to run such a check, but found that Triple I was inoperative at that moment. At 8:32, when Barney first called for the warrant, Triple I was still inoperative. Therefore, Defendants' criminal records could not have been a factor in Barney's initial request for a warrant, although this declaration was probably added, as window dressing, during the period between his initial request for a warrant and the time the affidavit was prepared. Clearly, a defendant's criminal record may not serve as a basis for probable cause if the officer does not know about it.

Therefore, of the four grounds stated for probable cause, Barney's experience, the chemical smell, Defendants' criminal records, and the locked glove box, only the locked glove box can survive the court's analysis. Consequently, the court must query whether a law enforcement officer, who searches a rented vehicle after making a routine traffic stop and finds the glove box locked and without a key, has probable cause to suspect a crime. Although the lines separating constitutional and unconstitutional searches are neither neatly nor clearly drawn, the Fourth Amendment does not grant a license to law enforcement officials to find probable cause in every instance. Courts are reluctant to find probable cause on attenuated evidence. The court recognizes that law enforcement is a difficult undertaking and does not wish to hamper efforts to eradicate crime.

However, what the government asks here stretches probable cause beyond necessary proportions and unnecessarily weakens Fourth Amendment protection. Consequently, the court finds that the warrant was not supported by probable cause.

*5. Does the Good Faith Exception Apply?*—Defendants assert that because the warrant was invalid, the evidence seized in the vehicle must be excluded. "[T]he Fourth Amendment 'has never been interpreted to proscribe the introduction of illegally seized evidence in all proceedings or against all persons.'" *Leon,* 468 U.S. at 906, 104 S.Ct. at 3411 (quoting *Stone v. Powell,* 428 U.S. 465, 486, 96 S.Ct. 3037, 3049, 49 L.Ed.2d 1067 (1976)). "Whether the exclusionary sanction is appropriately imposed in a particular case ... is 'an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct.'" *Id.* (quoting *Illinois v. Gates,* 462 U.S. 213, 223, 103 S.Ct. 2317, 2324, 76 L.Ed.2d 527 (1983)). Rather, whether such evidence should be excluded turns on whether it violates the good faith exception to the exclusionary rule.

■ The good faith exception involves an "evaluation of the costs and the benefits of suppressing reliable physical evidence seized by officers reasonably relying on a warrant issued by a detached and neutral magistrate." *Id.* at 913, 104 S.Ct. at 3415. The good faith exception will not apply in four cases: (1) when the affiant knows that the information in the affidavit was false, *see Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978);[10] (2) when the magistrate wholly abandons his judicial role, *see Lo–Ji Sales, Inc. v. New York,* 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979); (3) when the affidavit so lacks in indicia of probable cause that reliance thereon would be unreasonable, *see Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); and (4) when the warrant is facially deficient.[11] *See Leon,* 468 U.S. at 897, 104 S.Ct. at 3407.

■ The court has previously analyzed the four indicia of probable cause and found reliance thereon unreasonable. The court also finds that the magistrate wholly abandoned his judicial function. "A magistrate ... who acts instead as 'an adjunct law enforcement officer' cannot provide valid authorization for an otherwise unconstitutional search" *Id.* at 914, 104 S.Ct. at 3416 (quoting *Lo–Ji Sales, Inc. v. New York,* 442 U.S. 319, 326–27, 99 S.Ct. 2319, 2325, 60 L.Ed.2d 920 (1979)). Barney and officials of Sevier County have worked together closely for many years and have been involved together in numerous drug arrests. This close working relationship, while it is to be admired, may not serve as a substitute for an independent analysis by the magistrate of the grounds supporting the warrant. In other words, " 'good faith on the part of the arresting officer is not enough.'" *Id.* at 915 n. 13, 104 S.Ct. at 3416 n. 13 (quoting *Henry v. United States,* 361 U.S. 98, 102, 80 S.Ct. 168, 171, 4 L.Ed.2d 134 (1959)). "If subjective good faith alone were the test, protections of the Fourth Amendment would evaporate." *Id.* Rather, the magistrate must base his assessment, not on Barney's assessment of probable cause, but on objective indicia of probable cause. The court finds that the magistrate failed to conduct this independent analysis, and consequently, merely rubber stamped Barney's affidavit. Therefore, the government cannot rely on the good faith exception to introduce the illegally seized evidence.

The court, therefore, grants Defendants' Motion to Suppress on the following findings. First, the stop of Defendants' car was not pretextual. Nonetheless, Barney did not have a reasonable suspicion to detain Defendants after the initial stop, nor did Defendants consent to the initial search. When Defendants objected to the search, Barney did not have probable cause to obtain a warrant. Consequently, the warrant was improper. Further, the illegally seized evidence may not be intro-

---

**10.** The court has found that the affidavit was neither knowingly nor recklessly false.

**11.** The warrant was not facially deficient.

duced because the magistrate abandoned his judicial function by issuing a warrant that did not have a substantial basis for a finding of probable cause. Finding a constitutional infirmity, the court grants Defendants' Motion to Suppress Evidence.[12]

### B. Motion to Suppress Statements

Defendants move to suppress statements made during the vehicle search and during their subsequent interrogations. First, they allege that these post-custody statements were made before they received *Miranda* warnings. The post-custody statements at issue include the following: (1) statements Defendants made at the scene of the search while Barney waited for the search warrant; (2) statements McKneely made during a telephone conversation at the Sevier County jail; (3) statements Ellis and Akines made during interrogation by Deputy Barney's partner; and (4) statements Defendants made during interrogation by DEA Agent Paull. Second, Defendants contend that even if *Miranda* warnings were given, the statements adduced from these alleged interrogations were not voluntary, were coerced, and in the case of Paull's interrogation, were given after unnecessary delay.

The Fifth Amendment to the United States Constitution protects against self-incrimination. To implement this amendment, the Supreme Court has mandated that "an accused must be informed of his right to have counsel present during questioning." *United States v. Giles*, 967 F.2d 382, 385 (10th Cir.1992) (citing *Miranda v. Arizona*, 384 U.S. 436, 469–70, 86 S.Ct. 1602, 1625–26, 16 L.Ed.2d 694 (1966)). This "Fifth Amendment privilege against self-incrimination prohibits admitting statements given by the suspect during 'custodial interrogation' without a prior warning." *Illinois v. Perkins*, 496 U.S. 292, 110 S.Ct. 2394, 110 L.Ed.2d 243 (1990). Therefore, two elements are necessary before *Miranda* rights attach and statements are suppressed: (1) the accused must be in

custody; and (2) the accused must be in interrogation.

With respect to Defendants' statements made at the search scene prior to arrest and to McKneely's statements made during his telephone conversation, the court will not suppress these statements. Clearly, both events occurred while the Defendants were in custody; however, neither event involved interrogation. In *Miranda*, the Supreme Court defined interrogation: "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444, 86 S.Ct. at 1612. Interrogation may include both express questioning and police practices that are the "functional equivalent" of express questioning. *See Rhode Island v. Innis*, 446 U.S. 291 at 300, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 Statements or actions of the police are the functional equivalent of express questioning if they "are reasonably likely to elicit an incriminating response from the defendant." *Id.* at 301, 100 S.Ct. at 1689–90.

■■■ Turning to the facts of this case, undisputedly the first prong, express questioning, was not satisfied, either in the case of the statements made at the search scene or of statements made during the telephone call. Thus, the dispute boils down to whether Defendants were subjected to words or actions by the police that the police should have known would elicit a response. *See id.* at 303, 100 S.Ct. at 1690. The court, with the benefit of the video tape of the search, finds that Barney asked general questions, such as who owned which pieces of luggage and whether they had a key to the glove box. Thereafter, throughout the search transaction, both before and after Barney called for the warrant, the court finds no interrogation. Consequently, the motion to suppress Defendants' statements made at the scene of the search is denied.

---

12. Because of the court disposition of this matter, it is unnecessary to determine whether the

good faith exception validates the warrant.

■ Similarly, McKneely's telephone call occurred during a period that he was in custody; however, he was not under interrogation at this time. Above the telephone was a sign which indicated that calls placed on that telephone may be recorded. Clearly, the Sevier County deputies could not have known that a defendant would disregard the sign and make incriminating statements over the telephone. Accordingly, the telephone call did not involve interrogation. Therefore, McKneely had no right to *Miranda* warnings when he placed the telephone call, and the Motion to Suppress is denied as to these statements.

Defendants also seek to suppress statements made during interrogation with a Sevier County deputy and during interrogation with DEA Agent Paull. Defendants received *Miranda* warning prior to both of these interrogations. Notwithstanding these warnings, Defendants contend that the statements were involuntary, that the statements were coerced, and in the case of the Paull interrogation, that the statements were made after undue delay. The court finds no merit to these arguments and denies Defendants' Motion to Suppress Statements.

"The Supreme Court has clearly ruled that the violation of fundamental constitutional rights is a highly sensitive matter which is not readily waived." *Fernandez v. Rodriguez*, 761 F.2d 558, 562 (10th Cir. 1985). Whether Defendants have waived their fundamental right against self-incrimination is a question evaluated by " 'the particular facts and circumstances surrounding [the] case, including the background, experience, and conduct of the accused.' " *Id.* (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). Waiver may only be found if the record clearly demonstrates " 'an intentional relinquishment or abandonment of a known right or privilege.' " *Id.*

■ In *Fernandez*, the Tenth Circuit overturned a trial court's finding of waiver. In applying the *Zerbst* analysis, the Tenth Circuit emphasized that the defendant's limited command of the English language raised a question concerning whether he understood a stipulation that he signed which waived his right against self-incrimination. That same defect is not present here. The record demonstrates that Defendants were intelligent men, and at least two of them had previous experience with the criminal justice system. Defendants' conduct during the search indicates that they understood their rights and would not waive them without consideration. For example, prior to the time Barney called for the warrant, Defendants demanded that the search stop. Clearly, this demand was accompanied by an understanding that an intrusive search requires a warrant. Accordingly, this court finds that Defendants were thoughtful, intelligent men who chose to communicate with police despite their right not to speak.

Similarly, Defendants contend that Officer Barney's offer to arrange for a controlled delivery in exchange for a reduced charge constituted coercion, which invalidates their statements and mandates that this court suppress them. "Incriminating statements obtained by government acts, threats, or promises that permit defendant's will to be overborne are coerced confessions running afoul of the Fifth Amendment and are inadmissible at trial as evidence of guilt." *United States v. Short*, 947 F.2d 1445, 1449 (10th Cir.1991) (citations omitted), *cert. denied*, —— U.S. ——, 112 S.Ct. 1680, 118 L.Ed.2d 397 (1992). Coercion is a component of voluntariness, which like voluntariness must be judged by the totality of the circumstances. *Id.* Several factors are relevant to this judgment, including the intelligence and education of the individual being questioned, whether he was advised of his constitutional rights, the length of detention, the prolonged nature of the questioning, and whether the individual was in physical pain. *Id.*

These factors do not favor Defendants' coercion argument. First, the court has previously found that Defendants are intelligent men with a reasonable level of education. Further, during interrogation Defendants received *Miranda* warnings. Finally, the record does not indicate that the

detention or length of questioning was either unreasonable or prolonged. Neither is there evidence that any of Defendants were in physical pain. The sole factor favoring Defendants' argument is Deputy Barney's controlled delivery offer. Although this factor bears some weight, this court concludes that when weighing the various factors, those factors favoring admission outweigh the single factor favoring coercion and suppression. Accordingly, the court concludes that the statements were not coerced.

■ Finally, Defendants contend that their statements were made in violation of the *Mallory–McNabb* rule which requires the suppression of statements made during a period of unnecessary delay prior to bringing the suspect before a magistrate. *See McNabb v. United States*, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943); *Mallory v. United States*, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957). Defendants were arrested on June 15, 1992. They remained in the custody of Sevier County until the following day, when the United States government assumed jurisdiction. Federal charges were filed against Defendants on June 17, 1992, Doc. No. 2, and Defendants were arraigned before a federal magistrate in Salt Lake City, three hundred miles from the arrest site, on June 18, 1992, Doc. No. 3. Defendants argue that DEA Agent Paull took the long route from Richfield to Salt Lake City and, thereby, subjected Defendants to additional pressure.

Again whether the delay was reasonable "is to be determined in light of all the facts and circumstance of the case." *United States v. Torres*, 663 F.2d 1019, 1023 (10th Cir.1981) (citations omitted), *cert. denied*, 456 U.S. 973, 102 S.Ct. 2237, 72 L.Ed.2d 847 (1982). The *McNabb–Mallory* rule, now codified in Federal Rule of Criminal Procedure 5(a), becomes operative "once the accused is taken into federal custody." *Id.* (citations omitted). In *Torres*, federal authorities assumed custody of the accused on September 30, after the accused had been in the custody of local official for four days. *Id.* at 1023. Federal charges were filed on October 1, and the accused was arraigned before a magistrate on October 2. *Id.* at 1024. The court found that this time lapse did not constitute an unnecessary delay. *Id.*

Similarly, in the present matter, Defendants were taken into state custody on June 15, 1992. Federal authorities assumed custody of Defendants on June 16, 1992. Federal charges were filed on June 17, 1992, and Defendants were arraigned before a federal magistrate on June 18, 1992. In light of *Torres*, this two day delay is not unreasonable, especially considering the distance between Richfield and Salt Lake City, the location of the nearest federal magistrate. Therefore, the court does not find that the *McNabb–Mallory* rule was violated. Accordingly, statements made to Agent Paull will be admitted.

## III. CONCLUSION

To summarize, the court grants Defendants' Motion to Suppress Evidence, but denies their Motion to Suppress Statements. In so granting Defendants' Motion to Suppress Evidence, the court finds that although the initial stop of Defendants' vehicle was not pretextual, Defendants did not consent to the search of their vehicle. However, even if Defendants had consented, when they withdrew their consent, Barney had no probable cause to suspect a crime. Finally, the court finds that the good faith exception does not apply to validate the search. Consequently, the court grants Defendants' Motion to Suppress Evidence seized during the search.

The court, however, finds no constitutional grounds on which to suppress statements made by Defendants. Concerning statements made at the scene of the search and statements made over the telephone, the court finds no interrogation. Therefore, Defendants had no *Miranda* rights while making these statements. Defendants' statements made during interrogation were preceded by *Miranda* warnings. The court finds that these statements were voluntary and were not coerced. Finally, the court finds that the interval between when Defendants' federal custody began

and when they were arraigned before a federal magistrate did not constitute unnecessary delay. Therefore, the statements made during interrogation will not be suppressed.

IT IS SO ORDERED.